# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3454MN

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * On Appeal from the United |
| v. | * States District Court |
| | * for the District of |
| | * Minnesota. |
| Jeffrey S. Chmielewski, | * |
| | * |
| Appellant. | * |

_____

Submitted: March 14, 2000

Filed: July 11, 2000

_____

Before RICHARD S. ARNOLD and BEAM, Circuit Judges, and CONMY,[1] District
Judge.

_____

RICHARD S. ARNOLD, Circuit Judge.


Jeffrey Chmielewski appeals his convictions for currency structuring, 31 U.S.C.
§ 5324(a)(3), for filing false tax returns, 26 U.S.C. § 7206(1), and for making and
conspiring to make false statements to the United States, 18 U.S.C. §§ 371 and 1001.

---

[1]The Hon. Patrick J. Conmy, United States District Judge for the District of
North Dakota, sitting by designation.

He argues that his conviction for making false statements was based on insufficient evidence and that the District Court[2] erred in admitting evidence of prior bad acts and by enhancing his sentence based on losses suffered outside the United States. We affirm.

## I.

Mr. Chmielewski bought and sold slot machines. The convictions in this case arise from his sale of $2,700,000 in slot machines to customers in the Republic of South Africa between 1993 and 1995. During this period, the government of South Africa imposed a duty, between 69 and 54 per cent., on the value of goods entering the country. To aid his customers in avoiding this duty, Mr. Chmielewski sent them false sales invoices grossly understating the value of the slot machines that they were importing. The South African government lost $1,445,006 in duties as a result of this scheme.

Mr. Chmielewski also sent the false invoices to his U.S. freight forwarders. Freight forwarders arrange the shipment of goods overseas; their duties include filling out the required documentation for U.S. customs. Freight forwarders do not inspect the cargo themselves but rely on information provided by the exporter in completing the necessary customs declarations. Accordingly, the freight forwarders reported to the United States the false values contained in the defendant's invoices as part of the "Shipper's Export Declaration" required for such exports. If the freight forwarders had been given the true values, the scheme to defraud the South African government would have failed, because the values declared on the Shipper's Export Declaration are reported by the U.S. to the country receiving the exports.

_____

[2]The Hon. Ann D. Montgomery, United States District Judge for the District of Minnesota.

Mr. Chmielewski's South African customers paid him with cash and travelers' checks for the undervalued slot machines. At trial, the government presented evidence that Mr. Chmielewski willfully failed to report a portion of this income on his federal income-tax returns for 1993 and 1994. This evidence included unfiled tax returns for 1991, 1992, and 1994 that Mr. Chmielewski had ordered his employees to generate so he could obtain bank and car loans. These returns reflected a higher taxable income than the returns that he ultimately filed with the government.

On appeal, defendant argues that there was insufficient evidence that he was aware of the Shipper's Export Declaration forms filed by the freight forwarders with the government, or that he was involved in a conspiracy to make material false statements to the United States. He also argues that the loss in duties to the South African government should not have been considered in his sentencing because the loss occurred outside the United States. Mr. Chmielewski contends that the District Court erred in admitting the unfiled tax returns pursuant to Fed. R. Evid. 404(b) because they were evidence of unrelated acts of fraud, relevant only to establish his criminal propensities. He also claims that the District Court sentenced him outside the Guideline range for currency structuring and erred in determining the amount of tax loss attributable to his false tax returns.

II.

The government presented sufficient evidence at trial that Mr. Chmielewski was aware of the Shipper's Export Declaration form and knew that the false values he supplied to his freight forwarders would be submitted in turn to the United States. First, Mr. Chmielewski received copies of the customs documentation prepared by the freight forwarders. These documents included completed copies of the Shipper's Export Declaration form with the false values that he had provided. The Shipper's Export Declaration form declares prominently on its face that it is used for official purposes by the Secretary of Commerce and that a criminal penalty may be imposed

for falsified forms. Second, when his exports were initially investigated, Mr. Chmielewski had in his possession two Shipper's Export Declaration forms along with his sales invoices. Third, Mr. Chmielewski's alleged co-conspirators, his employees and customers, testified that they were aware the false values given in the invoices were being used for customs purposes.

In sum, Mr. Chmielewski had been given, and was found in possession of, documents that made clear (and had made clear to his business associates) that the false values sent to the freight forwarders were being submitted to the government on official customs forms. Additionally, there was evidence that Mr. Chmielewski had good reason to find out about the Shipper's Export Declaration form in order to carry out his scheme to avoid duties. If the true values had been stated for U.S. customs purposes, the false values stated on his sales invoices would have been reported in South Africa, and the scheme to avoid the import duty would have collapsed. From this evidence, the jury could have reasonably inferred that Mr. Chmielewski knew about the customs forms and intended the false statements of value to be made to the government. Based on his knowledge of the forms, the jury could also infer that Mr. Chmielewski conspired to make false statements to the United States. Mr. Chmielewski admits that he and his business associates agreed to falsify the sales invoices to help his customers avoid South African duties. False U.S. customs forms were necessary to complete this scheme, and his co-conspirators' testimony shows that they understood this.

Likewise, the jury could have reasonably decided that the understatement of value on a Shipper's Export Declaration form was a material misrepresentation for the purpose of 18 U.S.C. § 1001. A false statement is material if it has a natural tendency to influence or was capable of influencing the government agency or official to which it was addressed. United States v. Gaudin, 515 U.S. 506, 509 (1995). At trial, the government presented evidence that the values submitted in the Shipper's Export Declaration are used by customs officials in determining which outbound cargo to inspect; higher-valued cargo suggests high-technology goods whose export may be

restricted. Additionally, the values are used for statistical purposes which, inter alia, affect trade negotiations with other countries. The jury was supplied with sufficient evidence to decide that Mr. Chmielewski's misrepresentations were capable of influencing official action.

In sentencing Mr. Chmielewski for making false statements, the District Court did not err in considering the loss of duties to the South African government under U.S.S.G. § 2F1.1. Mr. Chmielewski argues that the sentencing enhancement was incorrect because the loss to South Africa occurred outside the United States, citing United States v. Chuna-Plazas, 45 F.3d 51 (2d Cir. 1995), and United States v. Azeem, 946 F.2d 13 (2d Cir. 1991). In those cases, the Court held that if extraterritorial acts are not crimes against the United States, they cannot be included in determining the offense level. Chuna-Plazas, 45 F.3d at 57. In this case, however, Mr. Chmielewski's false statements were domestic acts, and the crime charged is one against the United States. Therefore, the principle of those cases is inapplicable. The Courts in Chuna-Plaza and Azeem were worried about intruding into foreign jurisdictions and jurisprudences. It is no intrusion to gauge the severity of Mr. Chmielewski's domestic crime by measuring the damage done to his extraterritorial victims. In doing so, we consider a foreign loss not to uphold a foreign law, but to uphold our own law, U.S.S.G. § 2F1.1, which directs us to consider the loss caused by fraud as a measure of a just punishment.

Mr. Chmielewski argues that his trial was prejudiced by the admission of 404(b) evidence of prior fraud involving unfiled tax returns. The government presented evidence, over Mr. Chmielewski's objections, that in order to secure bank loans he ordered his accountant to generate dummy income-tax returns for 1991 and 1992. These returns reflected a much higher taxable income than the ones he actually filed with the government for those years. These returns were designed to make the defendant look rich to prospective lenders. Mr. Chmielewski argues that this evidence could serve no other purpose than to portray him as a dishonest man. We disagree.

We have previously held that evidence of a taxpayer's prior misconduct with tax returns may be relevant evidence of willfulness. See, e.g., United States v. Upton, 799 F.2d 432, 433 (8th Cir. 1986); United States v. Luttrell, 612 F.2d 396, 397 (8th Cir. 1980). Here, the jury could have reasonably viewed this evidence as tending to establish Mr. Chmielewski's level of involvement in the preparation of his tax returns and his awareness of the income reported on his returns. The government had the burden of proving willfulness at trial. The District Court did not abuse its discretion in allowing the government to show that Mr. Chmielewski, in the two years prior to those at issue, had willfully used false returns to misrepresent his income.

The government also presented evidence that, less than two months before he filed his 1994 tax return with the government, Mr. Chmielewski ordered one of his employees to generate a 1994 tax return in order to obtain a car loan. Once again, this return reported an income significantly greater than the return that Mr. Chmielewski ultimately filed with the government. Mr. Chmielewski did not object to the admission of this return on 404(b) grounds at trial, and we do not think that the District Court committed plain error in admitting it. This return was a nearly contemporaneous admission that Mr. Chmielewski's income was more than he reported to the government. It was either direct evidence, as the government suggested, of his actual income or, as discussed above, proof of his willfulness in underreporting his income.

We also reject Mr. Chmielewski's claim that he was sentenced outside the Guideline range for his currency structuring convictions. He asserts that the District Court's judgment imposes 46 months of imprisonment for currency structuring, which would be in excess of the range allowed. The sentence, however, is not for currency structuring. Rather, pursuant to U.S.S.G. § 3D1.4, his convictions for currency structuring and filing tax false returns were grouped and combined with his convictions for making false statements. He was sentenced to 46 months based on a combined offense level for all the counts of 21, which is within the Guideline range.

Finally, because we uphold Mr. Chmielewski's conviction and sentence for making false statements, we need not reach the issue that he raises with regard to the computation of his sentence for filing false tax returns; in light of our decision on the other issues, this issue is, as he admits, moot.  Appellant's Brief 32, n.6.

Accordingly, the judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK,  U.S.  COURT  OF  APPEALS,  EIGHTH  CIRCUIT.