# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-3307

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Delano Koski, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: March 14, 2005
Filed: September 26, 2005

———————

Before MURPHY, BYE and SMITH, Circuit Judges.

———————

MURPHY, Circuit Judge.

Delano Koski was charged with four counts of mailing threatening communications. A jury found him not guilty on Count I but guilty on the others. He appeals, contending that the district court[1] abused its discretion by admitting evidence of a prior conviction for mailing threatening communications and that there was insufficient evidence for one of the counts of which he was convicted. We affirm.

---

[1]The Honorable Lawrence L. Piersol, Chief Judge, United States District Court for the District of South Dakota.

Koski has a long history of frustration with the government, dating from 1964 when he had trouble obtaining benefits from the Department of Veterans Affairs (VA). In September 1978 he was audited by the Internal Revenue Service (IRS), and he has complained ever since that the IRS unlawfully taxed income and assets he did not have. In 1995 the IRS notified him of taxes he owed on the proceeds from the sale of a house he had jointly owned with a former girlfriend. Koski claims that the former girlfriend and her attorney sold the home without his permission after having him "sent to jail" and that his proceeds were less than the IRS charged. According to Koski, the IRS tax enforcement actions and the VA's continued denial of benefits have left him a penniless "ward of the state." Koski says he has voiced his complaints in hundreds of letters mailed to a variety of recipients—"from the dog catcher to the President of the United States."

In 2001 Koski wrote the IRS to protest its collection of taxes for a year in which he claimed to have had no taxable income. The IRS considered the letter threatening and forwarded it to Treasury Inspector General John Owen. Owen interviewed Koski in January 2002 and warned him that similar letters in the future could get him into trouble and recommended alternate ways for him to voice his complaints.

On May 30, 2003, Koski mailed a packet of correspondence to Owen. The package contained a letter to Owen, a copy of Koski's 2001 letter to the IRS, and copies of many other letters. Koski added handwritten remarks on the materials regarding the sale of his home and an earlier divorce. In the letter to Owen Koski protested the tax on the sale and asked, "Does someone honestly want me to crack up and kill the SOB's who have been fucking with me?" In another of the letters, headed "To Whom It May Concern," Koski stated, "When all this is over, the Government will lose and God and I will win." In a copy of a letter addressed to Senator Tom Daschle, Koski remarked that "the IRS and others have continued to harass and threaten me to a point where I've considered murder or suicide." Owen never

received the pack of correspondence sent to him because he had retired. This mailing was the basis for Count I of the indictment, the count on which Koski was found not guilty.

On June 5, 2003, Koski mailed a packet of correspondence to South Dakota Attorney General Larry Long. Most of these materials concerned allegations about an attorney who had represented Koski's girlfriend. Koski complained that the lawyer had sold his home without his signature after having him "arrested and sent to prison without a court hearing at which [he] was represented." He enclosed a letter he had received from the lawyer in 1994 about the sale of the house. The lawyer's letter also demanded that Koski return property and money belonging to his former girlfriend. Comments added by Koski to this letter claimed that the attorney had misrepresented financial matters involving the couple. Koski also sent the Attorney General a copy of his letter to the South Dakota Bar Association asking it to disbar that lawyer and another associated with her. He also asked the bar association to require the lawyers to replace his home and cover his living expenses since he was "unable to support [himself] because of all the things they've done to [him]." A copy of the bar association response was also sent to Attorney General Long. In its letter the association informed Koski that he had not stated an ethics violation on which it could act. Koski wrote on the letter that "there is absolutly [sic] no law on Earth that allowed [the girlfriend's attorney] to ... have [him] sent to prison and [to] sell [his] home without [his] signature."

The most current correspondence which Koski included in the mailing to the Attorney General were copies of letters he had sent to South Dakota Governor Michael Rounds, complaining to him about what the attorney had done. In a February 21, 2003 letter to the Governor, Koski complained about the "frontier justice system some people [were] practicing" in South Dakota that had caused him to be unable to "vote or own a gun because some no good rotten attorney had [him] labeled a convicted felon" and "turned [his] life into a nightmare." If he were to leave South

Dakota, Koski warned that he would certainly "let people know what happened to [him there] that caused [him] to leave." Also enclosed was the governor's response stating that he was unable to assist Koski in judicial matters because of the separation of powers. In his April 9 reply, Koski told the governor that he was "disappointed" with his answer and declared that his girlfriend's attorney had taken his home "because she knew from experience that she could do it, and no one, especially no one in Government, would do anything about it." Also among the enclosures were Koski's letter to Owen, asking whether "someone honestly want[s] me to crack up and kill the SOB's who have been fucking with me" and a "To Whom It May Concern" letter, promising that "[w]hen all this is over, the Government will lose and God and I will win."

After the materials arrived in the mail at the Attorney General's office, they were read by Assistant Attorney General Ann Meyer. She testified at trial that she had interpreted the materials to be a threat, and two other attorneys in the office who examined them agreed. The Attorney General forwarded the materials to the United States Attorney pursuant to the office policy on threatening communications. Count II of the indictment contained allegations relating to these materials, and Koski raises his insufficiency argument on this count.

On August 18, 2003, Koski mailed an envelope of written material to Dennis Finch, a Rapid City attorney whom Koski had unsuccessfully attempted to retain in a prior legal matter. Finch's packet included copies of the letters addressed to Owen, Governor Rounds, Senator Daschle, and the South Dakota Bar. Also enclosed were a number of documents relating to the sale of Koski's home. In a second letter addressed to Senator Daschle's office Koski stated: "If the IRS takes my SS check like you told me they intended to do, the final straw will have been broken." He then named his former girlfriend and her attorney and predicted that they would "wish they had never been born." Stapled to the packet of letters was Finch's business card on which the words "Ass Hole At Law" had been added. Finch felt threatened by the

correspondence and instructed his employees to contact the police if anyone suspicious came to the office. He also forwarded the package to the Federal Bureau of Investigation (FBI), and it is the basis of the charge in Count III.

Sometime during August 2003, FBI Special Agents Matt Miller and Jeff Majinski interviewed Koski about previous letters he had sent to the FBI and other recipients. Koski expressed his frustration with the IRS, and the agents provided him with the name of an IRS employee to whom he could address his concerns.

In October 2003 Koski mailed a packet of letters to South Dakota Senator Tim Johnson. The package again included letters regarding the sale of his home, in addition to letters from two law firms denying Koski's request for representation in matters concerning the VA and the county sheriff's department. The packet also included a copy of a letter Koski had originally mailed to Johnson in 1994, in which he stated he was "afraid that [he] will again land up being a ward of the state, or worse yet a prisoner for killing some of the outlaws who took [his] family and property from [him]." Also enclosed was a copy of a 1994 letter from Senator Daschle's office on which Koski had written:

> The fucking IRS is now threatening to take my SS check. It's really beginning to appear that no one in the whole fucking government is going to do one fucking thing to help until I do something drastic like Tim McVey [sic] did after the VA fucking pissed him off."

In a handwritten note to Senator Johnson, Koski declared:

> Everyone in government including you has told me "sorry" I'm not going to help you. I've gotten fucking pissed off enough to say I was going to start killing the SOB's who are fucking with me. All this has done is land me in prison.

The letters caused concern within Senator Johnson's office, and they were forwarded to the United States Capitol Police and form the basis for Count IV.

Following Senator Johnson's receipt of Koski's correspondence, Special Agent Miller arranged two further interviews with Koski to discuss this mailing and his letters to Owen, Attorney General Long, and Finch. Koski acknowledged writing the letters and asserted that his manner of expression had been necessary to spur the recipients into action on his behalf. Miller obtained a written statement from Koski during an October interview and another during an interview on November 4, 2003.

On November 29, 2003, Koski was indicted on four counts of mailing threatening communications, in violation of 18 U.S.C. § 876. Count I was based on the correspondence mailed by Koski to Owen, Count II on Koski's letters to Attorney General Long, Count III on the packet sent to Finch, and Count IV on the correspondence to Senator Johnson. The case went to trial before a jury, and it returned a verdict of not guilty on Count I but guilty on Counts II, III and IV. He was sentenced to three concurrent terms of 30 months. Koski appeals.

Koski first contends that the district court erred in admitting evidence that he had been convicted for mailing threatening communications. The court admitted the evidence under Federal Rule of Evidence 404(b) for proof of knowledge, lack of mistake, or intent, but Koski says it was impermissible evidence of a propensity to mail threatening communications. Intent was not an element of the offense he says, and he had admitted knowingly putting the materials in the mail. He also argues that his 1996 conviction was too remote in time to the charged offenses to be admissible under Rule 404(b) and that the district court failed to balance on the record the probative value of the evidence against its prejudicial effect. The government responds that Koski's prior conviction was properly admitted to show his knowledge that the mailing of threatening communications is regulated, monitored, and prosecuted, that the district court minimized any potential prejudice by admitting only the fact of conviction without any details of the crime and by giving a limiting instruction, and that the 1996 conviction was not too old to be admissible under the rule.

Admission of Rule 404(b) evidence is normally reviewed for abuse of discretion, United States v. Brown, 148 F.3d 1003, 1009 (8th Cir. 1998), but Koski failed to object when it was introduced so its admission here is reviewed for plain error. United States v. Chmielewski, 218 F.3d 840, 843 (8th Cir. 2000). Rule 404(b) is a rule of inclusion rather than exclusion, allowing the admission of other crimes evidence "relevant to any issue in the trial" other than any criminal disposition of the accused. United States v. Fletcher, 322 F.3d 508, 518-19 (8th Cir. 2003). Under Rule 404(b) a prior conviction is admissible when it is "(1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) supported by sufficient evidence; and (4) such that its probative value is not outweighed by any prejudicial impact." United States v. Ruiz-Estrada, 312 F.3d 398, 403 (8th Cir. 2002). We will reverse only when the evidence "clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." Brown, 148 F.3d at 1009.

The knowing use of the mails to deliver a communication containing a threat to injure the addressee of the letter or another person is a federal crime under 18 U.S.C. § 876. The intent of the sender is not an element of the offense. In analyzing threats under § 876 the question for the jury is whether "a reasonable recipient, familiar with the context of the communication, would interpret it as a threat." United States v. Bellrichard, 994 F.2d 1318, 1323-24 (8th Cir. 1993) (internal quotations omitted); see also United States v. Whitfield, 31 F.3d 747, 749 (8th Cir. 1994); United States v. Patrick, 117 F.3d 375, 377 (8th Cir. 1997). Koski testified in his defense that his letters were merely a "cry for help" rather than threats, but his prior conviction for mailing threatening communications was evidence that Koski was aware that his previous correspondence had been found threatening. The evidence was relevant to his theory of defense, and Koski has not shown that any prejudice from its admission outweighed its probative value. The district court instructed the jury to consider the evidence "only on the issues of defendant's knowledge, lack of mistake, and intent," United States v. McCarthy, 97 F.3d 1562, 1573 (8th Cir. 1996),

and "the bare bones manner in which the evidence was presented to the jury—the prosecution elicited only the actual fact of conviction and not the facts of the incident—acted as a safeguard against unfair prejudice," United States v. Burk, 912 F.2d 225, 229 (8th Cir. 1990). The prior conviction and the charged crimes were separated by seven years, not an unreasonable length of time. See United States v. Frederickson, 601 F.2d 1358, 1365 (8th Cir. 1979). We conclude that the district court did not abuse its discretion in admitting the evidence and certainly find no plain error.

Koski also contends that there was insufficient evidence to support his conviction on Count II. That charge was based on the correspondence he mailed to the South Dakota Attorney General, and he claims some of the materials were the same as for Count I. One of the letters in the materials sent to the Attorney General was a copy of the letter to Treasury Inspector General Owen. In both packets Koski included a "To Whom It May Concern" letter about how he would cause the government to lose with God's help. Because the jury acquitted him of his mailing to Owen and the package sent to Attorney General Long included some of the same letters, he argues that he should not have been convicted on Count II. He claims that none of the materials targeted the Attorney General or his office and that the mailing could not reasonably have been taken as a threat.

The government contends that there was sufficient evidence for a reasonable jury to conclude that the packet sent to the South Dakota Attorney General would have been interpreted as a threat by a reasonable recipient. It argues that the evidence supporting Count II was mostly different from that relating to Count I. It also points out that Assistant Attorney General Ann Meyer testified about the alarm caused by Koski's materials but that there was no comparable evidence for Count I. Moreover, Koski's letter to the Attorney General reached the office of its addressee while Owen, the intended recipient of the Count I mailing, never saw the correspondence.

In addressing a challenge to the sufficiency of evidence we determine only whether the record underlying the contested conviction, when viewed in the light most favorable to the government, is enough to support a rational jury in finding every element of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); United States v. Schmidt, 922 F.2d 1365, 1368 (8th Cir. 1991). The question here is not whether we can reconcile the jury's conviction on Count II with its acquittal on Count I. Instead, we must simply ask whether the record would allow a rational jury to determine beyond a reasonable doubt that a reasonable recipient would interpret the packet mailed to the South Dakota Attorney General as a threat to either him or another person. See 18 U.S.C. § 876(c) (prohibiting knowing use of the Postal Service to deliver communications containing a "threat to injure the person of the addressee or of another"); Bellrichard, 994 F.2d at 1323-24 (§ 876 reaches correspondence that a reasonable recipient, familiar with the surrounding circumstances, would interpret as a threat). "When determining whether a reasonable person would feel threatened, we must review the totality of the circumstances in which the communication was made." Patrick, 117 F.3d at 377.

With this standard in mind we turn to the evidence in the record relating to Count II, examining it as a whole in the light most favorable to the government, to determine whether it was sufficient to support the jury's finding that a reasonable recipient would have interpreted it as a threat to the addressee or some other person. The question is whether the content of Koski's mailing to Attorney General Long "viewed in textual context and also in the context of the totality of the circumstances . . . affords an evidentiary basis upon which a reasonable jury could find the defendant guilty beyond a reasonable doubt of the crime of sending a threatening communication." Bellrichard, 994 F.2d at 1323.

The mailing to Long evidenced Koski's anger about not having obtained help from the authorities despite the injustices he had reported to them. The materials also expressed his rage toward his former girlfriend's attorney, whom Koski blamed for

turning his life into a nightmare by causing his imprisonment, the loss of his rights, his house, and other assets. Koski described how in spite of his many attempts to get help to punish the lawyer and obtain compensation for her actions, government officials and the bar association had failed to act. The materials included two letters Koski had mailed to the governor just two months before. One of them complained about the lack of action by the governor and recounted how the attorney had taken his property because "she knew from experience that she could do it, and no one, especially no one in government, would do anything about it." Koski complained in other enclosures that he could no longer "vote or own a gun because some no good rotten attorney had [him] labeled a convicted felon," questioned whether "someone honestly want[ed] [him] to crack up and kill the SOB's who have been fucking with [him]," and declared that "[w]hen all of this is over, the Government will lose and God and [he] will win."

This evidence, when viewed together in context, was sufficient for a jury to find that a reasonable recipient would have interpreted Koski's correspondence as a threat against its recipient, Attorney General Long who was a high government official and leading member of the profession about which Koski complained. A reasonable recipient could also have interpreted the materials as a threat to another, whether other employees in the Attorney General's office or the attorney who Koski claimed had "turned [his] life into a nightmare" by actions "no law on Earth" permitted. The statute applies to "any threat to injure the person of the addressee or of another", 18 U.S.C. § 876(c), not only to threats against the addressee.

The evidence underlying Count II not only includes additional correspondence and different subject matter than that related to Count I on which Koski was acquitted, but it also differs in other respects. Assistant Attorney General Ann Meyer and two other attorneys in her office considered the material threatening and forwarded it to the United States Attorney pursuant to an office policy on threatening communications. In Count I there was no evidence about a recipient's reaction to the

-10-

mailing, however, and our cases have consistently given significant weight to that type of evidence. See Patrick, 117 F.3d at 377 (conviction affirmed where recipient interpreted communication as threat); United States v. Poe, 96 F.3d 333, 334 (same); Whitfield, 31 F.3d at 749 (same); United States v. Barcley, 452 F.2d 930, 934 (8th Cir. 1971) (conviction reversed where the recipient did not interpret the communication as a threat). Further, Koski's mailing to Attorney General Long arrived while he remained in office, but Owen had retired from the IRS and never received the Count I materials.

The purpose of 18 U.S.C. § 876 is to prohibit the use of the mails to convey threats and to protect recipients from receiving threats of injury. While the right to protest to authorities is protected by the First Amendment, the Supreme Court has long distinguished protected speech from threats. See, e.g, Watts v. United States, 394 U.S. 705, 707 (1969). In this case the court instructed the jury about the distinction between constitutionally protected criticism and criminal threats. The jurors were instructed that the former may use language that is "vehement, caustic, unpleasantly sharp, vituperative, abusive or inexact" but that threats are not constitutionally protected. Included in Koski's mailing to Attorney General Long was his question, "Does someone honestly want me to crack up and kill the SOB's who have been fucking with me?", his complaint that he could not "even vote or own a gun because some no good rotten attorney had [him] labeled a convicted felon", and his promise that "[w]hen all this is over, the Government will lose and God and I will win." Based on the evidence it was within the province of the jury to decide whether Koski's communications underlying Count II were constitutionally protected speech or threats of injury. See United States v. Lincoln, 589 F.2d 379, 382 (8th Cir. 1979). We conclude that the evidence in Count II was sufficient for a rational jury to find that its recipient could reasonably interpret the mailing as a threat. See Bellrichard, 994 F.2d at 1323-24.

Accordingly, because the district court did not plainly err or abuse its discretion in admitting evidence of Koski's prior conviction and because there was sufficient evidence for a rational jury to find that a reasonable recipient would interpret the Count II materials as a threat, we affirm the judgment of the district court.

BYE, Circuit Judge, concurring in part, and dissenting in part.

I agree with the court's holding that the district court did not err in admitting evidence of Koski's 1996 conviction at trial. I respectfully dissent, however, from the court's determination there was sufficient evidence to support Koski's conviction on Count II.

"[A] statute . . . which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech." Watts v. United States, 394 U.S. 705, 707 (1969). Significantly, we have recognized "every person has a right to communicate with public officials calling attention to improper conduct and . . . the language used may be vehement, vituperative or abusive without violating the law." Martin v. United States, 691 F.2d 1235, 1240 (8th Cir. 1982).

"The question of whether the language conveys a threat is an issue of fact for the jury." Id. (citing United States v. Lincoln, 589 F.2d 379, 381 (8th Cir. 1979)). However, it is the court's responsibility to decide "whether the language of a particular communication, viewed in textual context and also in the context of the totality of the circumstances in which the communication was made, affords an evidentiary basis upon which a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Bellrichard, 994 F.2d 1318, 1323 (8th Cir. 1993). "In order to sustain its burden of proof under § 876, the government must

present evidence sufficiently strong to establish beyond a reasonable doubt that the communication in question conveys a threat of injury." United States v. Barcley, 452 F.2d 930, 933 (8th Cir. 1971). "'If a reasonable recipient, familiar with the context of the communication, would interpret it as a threat, the issue should go to the jury.'" United States v. Whitfield, 31 F.3d 747, 749 (8th Cir. 1994) (quoting Bellrichard, 994 F.2d at 1323-24).

When Koski's communication to Attorney General Long is viewed in context, the evidence does not show a reasonable recipient would view the communication as conveying a threat. Instead, an examination of the context of the communication shows a reasonable recipient would view Koski's communication as Koski's attempt to inform Attorney General Long of the injustices Koski perceived he was facing. None of the letters in the packet were addressed to or discussed Attorney General Long or any individuals or entities associated with him. Instead, the packet contained *copies* of letters addressed to other governmental entities in which Koski expressed complaints and documented his frustrating experiences with the IRS and his former girlfriend's attorney. The packet also included copies of letters which were addressed to Koski and written in response to the letters Koski had written. The only reference to Attorney General Long in the materials was at the bottom of a copy of a letter to Agent Owen where it was indicated Attorney General Long was copied. In the same letter, Koski also copied President Bush, Senator Daschle, the *Rapid City Journal*, and the *Sioux Falls Argus Leader*. A reasonable recipient could not view the communication mailed to Attorney General Long, which contained copies of letters directed to others and indicated the same had been mailed to two newspapers and other government officials, as conveying a threat anymore than the members of this court could reasonably view the letters as conveying a threat if Koski had filed his own appeal in this court using the United States mail and included copies of the same letters in an appendix.

The majority states the letters "evidenced Koski's anger about not having obtained help from the authorities despite the injustices he had reported to them" and "his rage toward his former girlfriend's attorney, whom Koski blamed for turning his life into a nightmare by causing his imprisonment, the loss of his rights, his house, and other assets." The majority notes the "materials included two letters Koski had mailed to the governor just two months before" and "[o]ne of them complained about the lack of action by the governor." Additionally, Koski complained in another letter he could no longer "vote or own a gun because some no good rotten attorney had [him] labeled a convicted felon." Essentially, the majority reasons a reasonable recipient would view the communication as conveying a threat against Attorney General Long because he is a high ranking government official and a leading member of the legal profession and in the copied letters Koski complained government officials have failed to assist him and claimed an attorney has wronged him. I disagree this is a reasonable conclusion reached from the evidence or a permissible conclusion under the First Amendment.

Furthermore, although the copied letters contained statements of complaint and frustration, none of the language explicitly threatened anyone. There are only two statements in the materials Koski sent to Attorney General Long that could reasonably be viewed as threatening. In a letter addressed "To Whom It May Concern," Koski wrote, in relevant part:

> The IRS, FBI and others have been harassing me. I've written hundreds of letters trying to find out what in the hell is going on. . . . I honestly believe that the Government is trying to drive me to commit suicide. I'm a born again Christian and I believe that only God can decide when it is my time to die. *When all this is over, the Government will lose and God and I will win.*

(emphasis added). This statement is ambiguous at best.

-14-

Additionally, in a letter addressed to Agent Owen, Koski wrote:

About two or three years ago you were at my home asking about a problem I had with the IRS. I explained that Attorney Jean Cline had me sent to jail because I wanted to keep my job as a Real Estate Agent. I had written letters explaining what happened. I was convicted and this time I was sent to Federal Prison. While I was in prison, my home was sold without my signature. The IRS was told that I got $25,100.00 on this sale. I'm once again sending you a document which shows that I only got $3,699.11. Of this the IRS wants $3,551.29. You asked me what I might do if the IRS once again seized my assets. I told you that this wouldn't happen, because your investigation would prove that if anyone owed taxes on the sale of this house, it would be Betty Reif who made thousands. I honestly believed that this matter had been settled. Now I got served papers again saying that the IRS was giving me Final Notice before they seize my assets.

. . . .

What in God's name is going on here? Why has taxpayer's money been spent on this case all these years? What does the Government want from me? *Does someone honestly want me to crack up and kill the SOB's who have been fucking with me?*

Sincerely,

Delano Koski

Cc:  President Bush
     Senator Daschle
     Attorney General Long
     Rapid City Journal
     Sioux Falls Argus Leader

(emphasis added). This statement is also ambiguous. Ambiguous language in and of itself cannot support a conviction under § 876. <u>Martin</u>, 691 F.2d at 1239 (citing <u>Barcley</u>, 452 F.2d 930). Although the context and surrounding circumstances known

-15-

to the reasonable recipient may show innocuous or ambiguous language is indeed a threat, in this case an examination of the context reveals the opposite, as discussed above.

The majority also cites to Assistant Attorney General Meyer's testimony that she viewed Koski's letters as a threat. Our cases hold the effect on the recipient of receiving the communication may be relevant to whether a reasonable recipient would view the letters as a threat. See Barcley, 452 F.2d at 934. The purpose of examining the effect on the recipient is "proof of the effect of an allegedly threatening letter upon the addressee would throw light upon the intent of the sender within the context of the dialogue between the parties to the correspondence." Id. at 934 n.6. In the instant case, Assistant Attorney General Meyer's opinion about whether the communication was a threat does not shed light on the context of the communication because of the complete absence of a relationship between Koski and Assistant Attorney General Meyer or anyone else at the Attorney General's Office.

For the foregoing reasons, I would affirm Koski's convictions on Counts III and IV, but reverse the conviction on Count II.

_____