# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 06-1026

_____

United States of America,         *
                                         *

        Appellee,         *
                                         *

    v.                   *
                                       *

Marlys Floyd,             *
                                       *

        Appellant.       *

_____

No. 06-1028

_____

Appeals from the United States
District Court for the Northern
District of Iowa.

United States of America,         *
                                         *

        Appellee,         *
                                         *

    v.                   *
                                       *

Rebecca Pippert,          *
                                       *

        Appellant.       *

_____

Submitted: May 17, 2006
Filed: August 21, 2006

_____

Before MURPHY, BEAM, and SMITH, Circuit Judges.
_____

BEAM, Circuit Judge.

In these consolidated criminal appeals, Pippert and Floyd (collectively, "Defendants") appeal their convictions and sentences for mailing threatening communications, 18 U.S.C. § 876. We affirm both the convictions and sentences.

## I. BACKGROUND

Floyd and Pippert, who is Floyd's daughter, admit that they sent a copy of an article about United States District Court Judge Joan Lefkow's murdered family to a lawyer, two judges, and the district court connected to various litigation previously involving the Floyd family in the Iowa state court system. The handwritten words "Be Aware Be Fair" appeared on the article. Defendants did not sign their names or include a return address on the envelopes. They were caught due to good detective work by the recipients of the letters, and the fact that the Floyds were known as prolific letter writers in connection with their litigation. When confronted by authorities, both Pippert and Floyd admitted to sending the letters, but denied that they intended to threaten or intimidate the recipients. However, at trial, Defendants were not allowed to present evidence of their actual intent in sending the letters. The district court ruled, in limine, that because intent to threaten was not an element of the offense, such evidence was not relevant and therefore inadmissible. The district court[1] also refused to instruct the jury that intent to threaten was an element of the offense.

Upon conviction, the district court sentenced Floyd to 33-months' imprisonment, and Pippert to 36-months' imprisonment. Both sentences are within

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

the guidelines range, but Pippert was given a two-level increase for obstruction of justice. In this regard, the district court found that Pippert gave perjured testimony at trial.

Defendants challenge the district court's decision that the government was not required to prove that they intended to threaten the recipients with the mailing. They also allege there was insufficient evidence that the communication was a threat, and that the district court should have granted their motion for judgment of acquittal on this issue rather than submitting it to the jury. Finally, Defendants assert that their sentences should be vacated.

## II. DISCUSSION

We review the district court's jury instructions and evidentiary rulings for an abuse of discretion. United States v. Florez, 368 F.3d 1042, 1044 (8th Cir. 2004); United States v. Carr, 67 F.3d 171, 175 (8th Cir. 1995). We review the district court's denial of a motion for judgment of acquittal in the light most favorable to the government, reversing only if no reasonable jury could have concluded beyond a reasonable doubt that defendants were guilty of the charged offense. United States v. Whitfield, 31 F.3d 747, 749 (8th Cir. 1994).

### A. Intent

Defendants contend that the district court erred in refusing to instruct the jury that intent to threaten the recipients was an element of an 18 U.S.C. § 876 offense. Section 876(c) makes it unlawful for anyone to "knowingly" use the United States mail service to send a communication "containing . . . any threat to injure the person of the addressee or of another." Our circuit precedent requires that the government prove two things in a section 876 case: "(1) that the defendant wrote a threatening letter and (2) that the defendant knowingly caused the letter to be forwarded by the

United States mail." United States v. Lincoln, 589 F.2d 379, 381 (8th Cir. 1979). The statute requires only that the sender intended to mail the letter containing a threat, not that the sender intended to threaten the recipient. See United States v. Koski, 424 F.3d 812, 817 (8th Cir. 2005) ("The intent of the sender is not an element of the offense."); United States v. Patrick, 117 F.3d 375, 377 (8th Cir. 1997) (rejecting the defendant's argument that he could not have intended the letters to be a threat of injury by noting that "Patrick's subjective intent is irrelevant"); Whitfield, 31 F.3d at 749 n.4 ("[T]he gravamen of a § 876 violation is the making of the threat; the maker's subjective intentions are irrelevant.").

Notwithstanding this precedent, Defendants argue, based on Virginia v. Black, 538 U.S. 343 (2003), that the district court erroneously did not require the government to prove that they intended to threaten the recipients of the communications. In Black, the Court examined a Virginia statute criminalizing cross-burning with the intent to intimidate. At the criminal trial, the jury had been allowed to *infer* the defendants had the requisite intent to intimidate by virtue of the fact that they had burned the cross. The Court held that the act of burning the cross, by itself, could not be considered prima facie evidence of intent to intimidate. Id. at 364-65. In walking the fine line between the First Amendment right to express oneself by burning a cross, and the commonwealth's right to prohibit threatening and intimidating activity, the Court found that the government must prove that the activity was a "true threat" to prove intent. Id. at 359. The Court defined "true threat" as one in which "the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals," whether or not the speaker actually intended to carry out the threat. Id. at 359-60.

The statute at issue in Black explicitly required proof of intent to intimidate. The Court found that the statute was constitutional, so long as the government was not allowed to use the cross-burning act itself as prima facie evidence that the actor

intended to intimidate or threaten. Instead, the government was required to prove that the actor actually so intended. Id. at 359-63.

There has been no First Amendment challenge in this case,[2] and on that basis alone, Black is distinguishable. And, our panel is bound by Koski, decided two years after Black, which specifically noted that the intent of the sender is not an element of a section 876(c) offense. 424 F.3d at 817. If the reasoning in Koski is faulty in light of Black, our panel cannot address it–only the en banc court can do so.[3]

So, based on existing Eighth Circuit precedent, the district court did not err in refusing to instruct the jury that the government must prove Defendants intended to

---

[2]We rejected a First Amendment challenge to a section 876 conviction in United States v. Bellrichard, 994 F.2d 1318, 1321 (8th Cir. 1993). In effect, perhaps Defendants, by their arguments and citation to Black, mean to make a First Amendment argument here. However, they do not couch their arguments as a First Amendment challenge in briefing, nor did they do so to the district court. For this reason we are also unpersuaded by Defendants' citation to United States v. Cassel, 408 F.3d 622 (9th Cir. 2005), wherein the Ninth Circuit upheld the defendant's First Amendment challenge to a statute prohibiting interference with a federal land sale by intimidation, 18 U.S.C. § 1860. The Cassel court held that Black required the government to prove that the defendant had intended to intimidate potential land buyers. 408 F.3d at 633.

[3]The statute is somewhat ambiguous with regard to what the word "knowingly" modifies. Section 876 provides criminal penalties for "whoever knowingly so deposits or causes to be delivered . . . any communication . . . containing . . . any threat to injure the person of the addressee or of another." 18 U.S.C. § 876(c). Arguably, the "knowingly" language could modify all the elements of the statute–requiring that the sender not only "knowingly" used the mails to send the letter, but also that the sender "knew" that the letter contained threatening language. See, e.g., Liparota v. United States, 471 U.S. 419, 424-25 (1985) (holding that the rule of lenity required the Court to construe ambiguous statute so that the word "knowingly" modified both the prohibition against the "transfer" of food stamps, and the "violation of the law" elements).

threaten the recipients, and the government met its burden of proving that Defendants intended to send the letters. In fact they admit doing so. The core issue for Defendants is whether the letters were, in fact, threatening.[4]

## B. True Threat

Defendants argue there was insufficient evidence that the letters were truly threatening, and as such, the district court should have granted the motion for judgment of acquittal and not sent the issue to the jury. In evaluating threats under 18 U.S.C. § 876, a district court should submit the issue for jury determination "'[i]f a reasonable recipient, familiar with the context of the communication, would interpret it as a threat.'" Whitfield, 31 F.3d at 749, (quoting United States v. Bellrichard, 994 F.2d 1318, 1323 (8th Cir. 1993)) (alteration in original). The district court's duty in this kind of case is to be the evidentiary gatekeeper, the same as in every other criminal case where there is a motion for judgment of acquittal. The district court does not decide that a particular communication *is* a threat as a matter of law, but whether there is sufficient evidence for a jury to decide that a reasonable recipient would interpret it as a threat. Bellrichard, 994 F.2d at 1323. If, at that point, the evidence is sufficient, it is up to the jury to decide whether the language in the communication at issue was a threat. Martin v. United States, 691 F.2d 1235, 1240 (8th Cir. 1982).

In order to decide that issue, in Bellrichard, we noted that the communication must be viewed in "textual context and also in the context of the totality of the circumstances in which the communication was made." 994 F.2d at 1323. In this case, the totality of the circumstances were these: Judge Lefkow's family had very

---

[4]Defendants also challenge the district court's ruling in limine that they could not present evidence regarding what their subjective intent was in mailing the articles. However, because such evidence is not relevant for conviction of the offense, see Koski, 424 F.3d at 817, the district court correctly excluded such evidence.

recently been murdered when the article was written and subsequently mailed, and all of the recipients were either judges or worked closely with judges in the Iowa state legal system. The article itself, sent in an envelope with no return address, probably would have been enough evidence of a threat to send the issue to the jury. But when the words "Be Aware Be Fair" are added to the equation, the question is not so difficult.

Defendants argue that the communication is ambiguous, and therefore they should have prevailed on their motion for judgment of acquittal, citing United States v. Barcley, 452 F.2d 930 (8th Cir. 1971). In Barcley, a disgruntled prison litigant sent a letter to his attorney. In the letter, the client noted his dissatisfaction with counsel's services in perfecting an appeal, and stated that "as soon as I can get this case situated around in the position I want you are the first S.O.B. that will go." Id. at 932. We held that because the letter was equally susceptible of both a threatening and non-threatening interpretation, the government must present additional evidence to remove the ambiguity before the question could go to the jury. Id. at 933.

The Bellrichard defendant made a similar "ambiguity" argument based on Barcley. In rejecting this claim, we noted that the issue before us on appeal was "whether the government made a submissible case" that the vitriolic letters sent by Bellrichard could be objectively viewed as threatening. Bellrichard, 994 F.2d at 1323. Bellrichard was a prolific letter writer, directing his wrath toward government officials such as the county attorney, the police, and various judges. The text of many of these letters is recounted in Bellrichard, 994 F.2d 1318, but a representative sample includes the following: "All I can say is that God will strike all of you dead while I'm in jail. Shitheads like you-all God eventually destroys! *God* bless you. Don't ever fuck with me again and God will let you live." Id. at 1321 n.7. Because there were material differences between the circumstances in each case, and in the content of the letters Bellrichard sent and the one that Barcley sent to his attorney, we found that the district court correctly submitted the issue to the jury. Id. at 1323.

We reject Defendants' ambiguity arguments on a similar basis (though we do not suggest that the communications at issue here compare favorably with the letters in <u>Bellrichard</u>). The <u>Barcley</u> letter was written, *signed*, and sent by a prisoner unhappy with his appointed appellate counsel. The anonymous, photocopied newspaper articles, about a judge's murdered family, with the aforementioned phrase written on top and sent to judicial officers, are quite different in both content and context. The district court did not err in finding that the government made a submissible case on whether the communications contained a threat. Accordingly, we affirm Defendants' convictions.

## C.    Sentencing

Pippert and Floyd both concede that the district court correctly calculated their guidelines sentence ranges, and sentenced them within those ranges. Pippert challenges her two-level enhancement for obstruction of justice and also challenges the district court's refusal to give her a reduction for acceptance of responsibility or aberrant behavior. Both Pippert and Floyd challenge their sentences as unreasonable.

<u>Obstruction</u>

In determining whether an obstruction enhancement should be applied, the district court must review the evidence and find, by a preponderance of the evidence, that the defendant gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." <u>United States v. Ziesman</u>, 409 F.3d 941, 956 (8th Cir.), <u>cert. denied</u>, 126 S. Ct. 579 (2005) (internal quotation omitted).

The district court added the obstruction enhancement because Pippert told police, and testified, that she only sent the article to the attorney and judges because she wanted them to know what had happened to Judge Lefkow's family, and she was

not sure they would have read the paper. She also said that her failure to put a return address on the envelope was *not* to conceal her identity. At sentencing, the district court found that both of those statements were perjured statements, about a material issue, and not as a result of confusion, mistake, or faulty memory.

The district court's credibility determination on this matter can be reversed only upon a showing of clear error. United States v. Galaviz-Luna, 416 F.3d 796, 800 (8th Cir.), cert. denied, 126 S. Ct. 814 (2005). A defendant who testifies in her own behalf, and then gets convicted, is obviously not automatically subject to the obstruction enhancement. United States v. Holt, 969 F.2d 685, 688 (8th Cir. 1992). Rather, the district court must independently find that the defendant has committed perjury by intentionally giving false testimony about a material issue. Galaviz-Luna, 416 F.3d at 800. It is a close question here, but the district court clearly felt that Pippert crossed a line. Based on our standard of review, we cannot say that the district court clearly erred in so deciding.

Acceptance of responsibility

Because we find that the obstruction enhancement was proper, we likewise cannot reverse the district court's refusal to grant the acceptance adjustment, absent extraordinary circumstances. United States v. Campos, 362 F.3d 1013, 1016 (8th Cir. 2004). Pippert put the government to its burden at trial, and went to trial to contest her guilt, not just to raise the legal issue about when the government has to prove intent. See United States v. Smith, 40 F.3d 933, 935-36 (8th Cir. 1994) (holding that acceptance reduction should not apply to a defendant who puts the government to its burden at trial by denying the factual elements of guilt). No extraordinary circumstances warrant the acceptance reduction. We affirm the district court's refusal to grant Pippert an adjustment for acceptance of responsibility.

Aberrant behavior

Pippert alleges that she was entitled to a departure for aberrant behavior because she is a law-abiding and God-fearing citizen. However, these are characteristics the guidelines already take into account (lack of criminal history), United States v. Wind, 128 F.3d 1276, 1278 (8th Cir. 1997), or cannot be taken into account (religion), United States v. DeShon, 183 F.3d 888, 890 (8th Cir. 1999). Accordingly, we affirm the district court's refusal to depart on these bases.

Reasonableness

Finally, Floyd and Pippert argue that their sentences are unreasonable. A sentence is unreasonable when the district court has relied significantly on impermissible factors, failed to account for permissible factors, or otherwise committed a clear error of judgment. United States v. Haack, 403 F.3d 997, 1004 (8th Cir.), cert. denied, 126 S. Ct. 276 (2005). Both defendants concede that their sentence was within the guidelines range, which makes the sentences presumptively reasonable. United States v. Gatewood, 438 F.3d 894, 896 (8th Cir. 2006). At sentencing, the district court went through the section 3553(a) factors and determined that a variance from the advisory guidelines range was not warranted. We agree with this analysis, and find that their respective sentences are reasonable.

## III. CONCLUSION

We affirm the district court.

_____

-10-