# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3028
_____

United States of America

*Plaintiff - Appellee*

v.

David Eugene Nicklas

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville
_____

Submitted: April 10, 2013
Filed: April 26, 2013
_____

Before RILEY, Chief Judge, BYE and BENTON, Circuit Judges.
_____

BYE, Circuit Judge.

A jury found David Nicklas guilty of transmitting a facsimile communication containing a threat to injure in violation of 18 U.S.C. § 875(c). The district court[1] sentenced Nicklas to forty-five months of imprisonment. Nicklas appeals his

_____

[1]The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

conviction raising three issues: (1) the district court erred when it allowed the government to redact the word "willfully" from the indictment in reference to Nicklas's state of mind when committing the crime; (2) the evidence was insufficient to support the verdict; and (3) the district court committed instructional error when it rejected Nicklas's proffered jury instruction on reasonable doubt. We affirm.

I

Sometime in 2008, Nicklas claims he received a vision that the mob purchased a property on his behalf in Rogers, Arkansas (the Rogers property). Following his vision, Nicklas wrote a series of letters to several people demanding they give him the deed to the Rogers property. The people Nicklas contacted included the developer of the Rogers property; the prosecutor for Benton County, Arkansas; the agent in charge of the Federal Bureau of Investigation (FBI) office in Little Rock, Arkansas; and the Inspector General of the Department of Justice in Washington, D.C. In these letters, Nicklas claimed he was personally responsible for costing organized crime over $1 billion, took credit for all the terrorists housed in Guantanamo Bay, and said he saved over 7,000 teenage girls who were kidnaped by the mob for prostitution and pornography. Nicklas claimed the mob placed the Rogers property in his name to implicate him in the mob's illegal activities, while at the same time claiming the mob intended to use the property as a drug and prostitution house.

Nicklas sent a total of four letters to the Inspector General. The third letter, which Nicklas faxed to the Inspector General on September 28, 2008, contained a threat to kill FBI agents. Specifically, the letter stated the following:

> Dear sir. I understand the FBI is under attack nationwide. Agents are being killed in a number of cities and a major task force is trying to figure out why. Remember what I told you last week. Tom Duvall, Gambino crime boss, gave you a message. For each day I do not receive the deed to my property which you are illegally holding, an FBI agent

will die. The deadline is noon of each day. The FBI satellite office in Fayetteville, Arkansas has the deed. Any other questions? Sincerely, David E. Nicklas.[2]

On November 19, 2008, a federal grand jury returned an indictment charging Nicklas with transmitting a facsimile communication containing a threat to injure in violation of 18 U.S.C. § 875(c). The indictment accused Nicklas of "knowingly and willfully" transmitting the fax. After being indicted, Nicklas was diagnosed with paranoid schizophrenia and found mentally incompetent to stand trial. In April 2012, a psychiatrist opined that Nicklas's competency had been restored by forced medication. Nicklas exercised his right to a jury trial shortly thereafter. Prior to trial, however, the government moved to redact the word "willfully" from the indictment. The government argued "willfully" overstated the *mens rea* required to prove the charge and was mere surplusage in the indictment. The district court granted the motion.

During the trial, Nicklas offered an instruction on the definition of reasonable doubt. The district court rejected Nicklas's proffered instruction and gave the jury the following instruction:

> A reasonable doubt is a doubt based on reason and common sense and not the mere possibility of innocence. A reasonable doubt is the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

---

[2]The day before this letter was faxed, Nicklas sent a letter to the Detroit FBI office and the Police Department in Detroit claiming terrorists had planted a nuclear device at a U Haul storage unit in Detroit.

Based upon the evidence presented at trial, which included the text of the September 28 fax to the Inspector General as well as testimony indicating government authorities treated the letter as a serious threat, the jury found Nicklas guilty. He filed a timely appeal. On appeal, he claims the district court erred when it allowed the government to redact the word "willfully" from the indictment. He also contends the evidence was insufficient to support the verdict. Finally, he contends the district court abused its discretion when it rejected his proffered instruction on reasonable doubt.

## II

We first review the challenge to the district court's order granting the government's motion to strike the word "willfully" from the indictment. Nicklas contends § 875(c) sets forth a specific intent crime and requires the government to prove he "willfully" made a threat. In response, the government argues § 875(c) only requires proof that a defendant knowingly transmitted a communication, and that the communication contained a statement a reasonable person would perceive as a threat–in other words, proving the statement is a threat does not depend upon the defendant's state of mind but upon how a reasonable recipient would interpret the defendant's words. See, e.g., United States v. Mabie, 663 F.3d 322, 332 (8th Cir. 2011) (indicating a threat is a "statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another") (citation omitted). The government therefore argues the indictment overstated the *mens rea* for the crime charged and the word "willfully" was mere surplusage. See United States v. Nabors, 762 F.2d 642, 647 (8th Cir. 1985) (setting forth the general rule that a court may not allow an indictment to be amended, but recognizing an exception where the amendment merely removes surplusage from the indictment and the remaining allegations correctly state the essential elements of an offense); United States v. Holmes, 594 F.2d 1167, 1173 (8th Cir. 1979) (indicating language in an indictment overstating the mental state for the crime charged constitutes mere surplusage).

Although the Eighth Circuit has addressed this same issue for an analogous charge under § 876(c), see United States v. Koski, 424 F.3d 812, 817 (8th Cir. 2005) (concluding the "intent of the sender is not an element of the offense"), we have not yet directly addressed whether § 875(c) is a specific intent crime that requires the government to prove the defendant's subjective intentions. Most circuits have addressed the issue, however, and have concluded § 875(c) sets forth a general intent crime which only requires the government to prove a defendant acted knowingly in transmitting a communication containing a threat to injure. See United States v. Whiffen, 121 F.3d 18, 21 (1st Cir. 1997); United States v. Francis, 164 F.3d 120, 121-22 (2nd Cir. 1999); United States v. Himelwright, 42 F.3d 777, 782-83 (3rd Cir. 1994); United States v. Darby, 37 F.3d 1059, 1066 (4th Cir. 1994); United States v. Meyers, 104 F.3d 76, 81 (5th Cir. 1997); United States v. DeAndino, 958 F.2d 146, 148-49 (6th Cir. 1992); United States v. Stewart, 411 F.3d 825, 828 (7th Cir. 2005); United States v. Teague, 443 F.3d 1310, 1319 (10th Cir. 2006).[3]

Undaunted by the deck of circuit precedent stacked heavily against him, Nicklas argues his fate is controlled by a Supreme Court decision. In Virginia v. Black, 538 U.S. 343 (2003), the Supreme Court addressed a Virginia statute that made it a felony to burn a cross on a highway or other public place "with the intent of intimidating any person or group." Va. Code Ann. § 18.2-423. In deciding whether the statute violated freedom of speech rights under the First Amendment, the Supreme Court defined "true threats" to "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence[.]" Black, 538 U.S. at 359. Nicklas argues this statement from Black suggests the Supreme Court requires proof of the defendant's actual intent to threaten, i.e., specific intent, for any offense involving a threat, including a threat under § 875(c). In response, the government argues Black is not on point because it dealt with a crime that already

_____

[3]The lone exception is the Ninth Circuit. See United States v. Twine, 853 F.2d 676, 679-80 (9th Cir. 1988).

required specific intent and involved a "true threat" analysis under the First Amendment rather than a *mens rea* requirement.

In United States v. Jeffries, the Sixth Circuit addressed the same argument Nicklas makes and concluded Black's First Amendment "true threat" analysis did not apply to the *mens rea* the government must establish to prove a violation of § 875(c):

> Black does not work the sea change that Jeffries proposes. The case merely applies—it does not innovate—the principle that "[w]hat is a threat must be distinguished from what is constitutionally protected speech." Watts, 394 U.S. at 707. It says nothing about imposing a subjective standard on other threat-prohibiting statutes, and indeed had no occasion to do so: the Virginia law itself required subjective "intent." The problem in Black thus did not turn on subjective versus objective standards for construing threats. It turned on overbreadth—that the statute lacked any standard at all. The prima facie evidence provision failed to distinguish true threats from constitutionally protected speech because it "ignore[d] all of the contextual factors that are necessary to decide whether a particular cross burning is intended to intimidate," and allowed convictions "based solely on the fact of cross burning itself." Id. at 365, 367.

692 F.3d 473, 479-80 (6th Cir. 2012). The Sixth Circuit reasoned the general intent crime set forth in § 875(c) does not ignore the context of an alleged threat because a "reasonable person" must still perceive the statement "as a serious expression of an intention to inflict bodily harm." Id. at 480 (quoting United States v. Alkhabaz, 104 F.3d 1492, 1495 (6th Cir. 1997)); cf. United States v. Floyd, 458 F.3d 844, 848 (8th Cir. 2006) (rejecting Black's application to a *mens rea* analysis under § 876(c)).

We agree with the sound reasoning in Jeffries, and now join the other circuits that have concluded § 875(c) does not require the government to prove a defendant specifically intended his or her statements to be threatening, but rather requires the government to prove a reasonable recipient would have interpreted the defendant's

communication as a serious threat to injure. We therefore conclude the district court did not abuse its discretion when it granted the government's motion to strike surplusage from the indictment. See United States v. Figueroa, 900 F.2d 1211, 1218 (8th Cir. 1990) (reviewing a motion to strike surplusage from an indictment for an abuse of discretion).

Nicklas next contends the evidence was insufficient to support his conviction, even if § 875(c) is a general intent crime, because the September 28 fax to the Inspector General did not contain a statement that a reasonable recipient would interpret as a serious threat to injure. We review challenges to the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the verdict and giving the verdict the benefit of all reasonable inferences. United States v. Johnson, 688 F.3d 494, 502 (8th Cir. 2012).

To sustain a conviction under § 875(c), the government was required to prove the following elements: (1) Nicklas caused a transmission to be made in interstate commerce; (2) he did so knowingly; and (3) the transmission contained a threat to injure the person of another. See, e.g., DeAndino, 958 F.2d at 148. Nicklas stipulated to the first two elements, so the only issue for the jury was whether the September 28 fax contained a statement a reasonable recipient would interpret as a threat to injure the person of another. In determining whether a communication is a threat that violates the statute, "the communication must be viewed in 'textual context and also in the context of the totality of the circumstances in which the communication was made.'" Floyd, 458 F.3d at 849 (quoting United States v. Bellrichard, 994 F.2d 1318, 1323 (8th Cir. 1993) (addressing an analogous violation of § 876)).

The government contends the statement Nicklas made in the September 28 fax–"For each day I do not receive the deed to my property which you are illegally holding, an FBI agent will die"–was alone sufficient to sustain the jury's conviction. In addition, the government presented evidence placing the letter in context. The

government called the developer of the Rogers property as a witness, and he informed the jury one of the letters he received from Nicklas said "Do not let the FBI influence your decision [to give me the deed] . . . I will take care of them." The government also called the Benton County Prosecuting Attorney's assistant as a witness, and she told the jury one of the eight letters sent to her boss accusing the county of wrongfully holding the deed to the Rogers property said "Tell the FBI to take a flying leap into hell." The government also introduced evidence of the extensive investigation the FBI initiated as a result of the September 28 fax, from which a jury could reasonably infer the FBI took the matter very seriously. Based on these facts, we conclude the evidence was sufficient to support the jury's verdict.

Finally, Nicklas challenges the district court's failure to give his proffered instruction on reasonable doubt. We review the district court's rejection of a proposed instruction offered by a criminal defendant for an abuse of discretion. United States v. Beale, 620 F.3d 856, 866 (8th Cir. 2010). We find no abuse of discretion here, because Nicklas's challenge is foreclosed by circuit precedent. See United States v. Spires, 628 F.3d 1049, 1054 (8th Cir.), cert. denied, 131 S.Ct. 2475 (2011) (upholding the same reasonable doubt instruction used by the district court in this case).

III

We affirm the judgment of the district court.

_____