**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

v.

KURT WILLIAM HAVELOCK,
       *Defendant-Appellant.*

No. 08-10472

D.C. No.
2:08-cr-00116-
ROS-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted
November 2, 2009—San Francisco, California

Filed August 23, 2010

Before: Betty B. Fletcher, William C. Canby, Jr., and
Susan P. Graber, Circuit Judges.

Opinion by Judge Canby;
Dissent by Judge Graber

12647

## COUNSEL

Daniel L. Kaplan, Assistant Federal Public Defender, Phoenix, Arizona, for the appellant.

Michael T. Morrissey, Assistant United States Attorney, Phoenix, Arizona, for the appellee.

## OPINION

CANBY, Circuit Judge:

Kurt William Havelock appeals his jury conviction of six counts of mailing threatening communications in violation of 18 U.S.C. § 876(c), which makes it a felony to mail a communication "addressed to any other person and containing . . . any threat to injure the person of the addressee or of another." Havelock argues, among other things, that the packets he mailed do not come within this statute because on their faces they were addressed to media corporations or other media organizations rather than individual persons. We conclude

that § 876(c) does indeed require that the mailed item containing the threat be addressed to an individual person, as reflected in the address on the mailed item. Because Havelock's communications were not so addressed to individual persons, we reverse his convictions.

## BACKGROUND AND PROCEDURAL HISTORY

Havelock had various reasons for being angry with the world, and he resolved to end his life in a blaze of publicity by appearing at the site of Super Bowl XLII in Glendale, Arizona, in February 2008, and randomly shooting people coming to the game. He expected to be killed in the process.

On "Super Bowl Sunday," approximately half an hour before the opening kickoff, Havelock put his newly-purchased assault rifle and several clips of ammunition in his car and drove to a post office near the stadium, where he deposited six Priority Mail envelopes into a mailbox. Four of the envelopes were addressed to media outlets, specifically, The New York Times, the Los Angeles Times, the Phoenix New Times, and the Associated Press; the other envelopes were addressed to two music-related Websites, theshizz.org and azpunk.com. Within these envelopes, or "media packets," as Havelock called them, were a hodgepodge of documents: a five-page "econo-political" manifesto entitled "Karma Leveller: Bad Thoughts on a Beautiful Day" (the "Manifesto"); a brief account of a recent incident involving Havelock, faux pipe bombs, and the police of Tempe, Arizona; an apologetic letter to "the Police," directing them to his car, "which [would be] parked in Glendale somewhere around the stadium," and imploring that the police "not take [their] hatred for [him] out on [his] dogs"; and another letter comprised of self-described "random blatherings."

Havelock's Manifesto was, in equal parts, a fractured meditation on the purported evils of American society and a paranoid, past-tense account of the experiences, beliefs, and

convictions that had sparked the would-be "econopolitical confrontation" at the Super Bowl. It also contained some passages referring to Havelock's planned massacre. For example, he stated: "It will be swift and bloody. I will sacrifice your children upon the altar of your excess." In another passage he stated: "I will slay your children. I will shed the blood of the innocent."

After leaving the post office, Havelock, according to his later statements, drove to a parking lot near the stadium to "wait for an opportunity to shoot people"—"a crowd of people"—and quite likely "commit suicide by cops." Minutes after arriving, however, a sense of "numbness" overcame him, and he experienced "a change of heart." Havelock called his father and told him, "Dad, I've done something wrong." He arranged to meet with his parents and his fiancee in Tempe. Havelock showed a copy of one of the letters to his father, who promptly told Havelock that they "need[ed] to go and talk to the Tempe police." Havelock agreed and, together with his parents, went to the police station. The Tempe police could not determine that any crime had been committed in Tempe, and they notified the Federal Bureau of Investigation ("FBI"). Shortly thereafter, agents of the FBI and the Bureau of Alcohol, Tobacco, and Firearms arrived at the station, conducted a recorded interview with Havelock, and took him into custody.

A federal grand jury indicted Havelock on six counts of mailing threatening communications in violation of 18 U.S.C. § 876(c).[1] Each count was identical except for the naming of the addressee. Count 1, for example, charged that Havelock "knowingly deposited in the United States mail, with intent to threaten, a communication, addressed to the New Times, containing a threat to injure the person of another, specifically children and persons in the vicinity of the Super Bowl XLII

---

[1]The indictment also included two counts of violation of other statutes, but those counts were dismissed by the district court and are not in issue.

event in Arizona." Prior to trial, Havelock moved to dismiss the indictment. In his motion, Havelock argued that the phrase "any other person" in § 876(c) refers exclusively to natural persons and, because the indictment alleged that the envelopes containing the media packets were addressed to corporations and other institutions, the indictment failed to allege facts sufficient to constitute an offense.[2] Havelock also argued for dismissal on the ground that the media packets were devoid of "any threat to injure" and instead contained "a posthumous explanation for his violent actions." The district court denied the motion to dismiss. As to the natural-person argument, the court agreed that the words "any other person" in § 876(c) referred exclusively to natural persons, but held that a jury could scrutinize the envelopes, salutation, and general contents of the media packets in determining whether they were addressed to natural persons. *See United States v. Havelock*, 560 F. Supp.2d 828, 830-31 (D. Ariz. 2008). As to the true-threat argument, the court ruled that it was a fact question for the jury whether the materials in the media packets contained true threats. *Id.* at 834.

At the close of evidence, Havelock moved for a judgment of acquittal, and incorporated his earlier motion to dismiss the indictment in his acquittal motion. The district court denied the motion. Havelock was subsequently convicted by the jury on all six counts. He was sentenced to a 366-day term of

---

[2]The address on the face of the media packet directed to theshizz.org, did include a natural person's name; it reads "THESHIZZ.ORG, DONALD MARTINEZ, 1309 E WILLETTA ST, PHX, AZ, 85006." However, count four of the superseding indictment, which concerns the media packet directed to theshizz.org, did not name Martinez as the addressee and instead specifically charged that Havelock "knowingly deposited in the United States mail, with intent to threaten, a communication, addressed to 'THESHIZZ.ORG' containing a threat to injure the person of another." The jury verdict used parallel language. The government has not argued that the package addressed to theshizz.org was addressed to a natural individual. Any contention that this packet was addressed to a natural individual has been waived.

imprisonment followed by a 36-month term of supervised release. This appeal followed.

## DISCUSSION

Havelock challenges his conviction on three grounds. First, he argues that the district court erred in interpreting 18 U.S.C. § 876(c) to mean that a trier of fact may consider the internal contents of a communication in determining whether the mailed communication is "addressed to any other person" as the statute requires. Second, he contends that the Manifesto consisted of political speech entitled to First Amendment protection. Finally, he asserts that, because his media packets were intended to be received as his posthumous statements, there was insufficient evidence to prove that he mailed the media packets with a specific intent to threaten, as required by our precedent. *See, e.g.*, *United States v. Twine*, 853 F.2d 676, 679-81 (9th Cir. 1988). Because we agree with Havelock on his first argument and find it dispositive, we do not reach his second or third contentions.

Havelock argues that the word "person" as used in § 876(c) refers exclusively to a natural person and, furthermore, that a communication is "addressed to any other person," as the statute requires, only if it identifies, on the outside of the envelope or packet, a natural person as the addressee. At oral argument, the Government agreed that the statute applies only to a communication addressed to a natural person, but asserted that one may go "inside the envelope" to determine whether the communication is addressed to a natural person. Because, in the Government's view, Havelock in his Manifesto at times addresses remarks to the reader, the crime was complete.

Essentially, the Government, like the district court, does not interpret "address" in the word "addressed" to refer to the act of placing delivery directions on a communication in the postal sense, but rather to the act of writing or speaking

directly to someone in, as counsel put it, the "Gettysburg" sense. *See* Webster's Third Int'l Dictionary 24 (1976) (defining "address" in its verb form as both "to write or otherwise mark directions for delivery on" and "to speak, write, or otherwise communicate directly to"). We conclude that the words of § 876(c) in their context do not permit the Government's interpretation.[3]

**[1]** "The starting point for resolving a dispute over the meaning of a statute begins with the language of the statute itself." *In re Kagenveama*, 541 F.3d 868, 872 (9th Cir. 2008) (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)). The statute in issue here provides in pertinent part:

> Whoever knowingly so deposits or causes to be delivered [by the Postal Service according to the direction thereon], any *communication* with or without a name or designating mark subscribed thereto, *addressed to any other person* and containing any threat to kidnap any person or any threat to injure *the person of the addressee or of another*, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 876(c) (emphasis added). Neither the words "person" nor "addressed" are defined in the statute.

**[2]** First, we agree with the parties and the district court that the "person" to whom the mail is addressed must be an individual person, not an institution or corporation. It is true that the Dictionary Act, 1 U.S.C.§ 1, defines "person" to include corporations and associations, but its definition applies in the interpretation of federal statutes "unless the context indicates otherwise." *Id.*; *see Rowland v. California*

---

[3]We review matters of statutory interpretation de novo. *United States v. Burkholder*, 590 F.3d 1071, 1074 (9th Cir. 2010).

*Men's Colony*, 506 U.S. 194, 200 (1993) ("[I]n the awkward case where Congress provides no particular definition, but the definition in 1 U.S.C. § 1 seems not to fit[,] . . . the qualification 'unless the context indicates otherwise' has a real job to do, in excusing the court from forcing a square peg into a round hole."). Here, the context requires that "person" means a *natural* person. Section 876(c) not only requires that the mail be "addressed to any other person" but that the offending threat be "a threat to injure the person of the addressee or of another." It makes no sense to threaten "to injure the person" of a corporation. *See United States v. Brownfield*, 130 F. Supp.2d 1177, 1180-81 (C.D. Cal. 2001). Accordingly, the threatening communication must be addressed to a natural person, and the indictment in this case was defective in failing so to allege.[4]

[3] Although the parties agree on the need for a natural-person addressee, they differ on whether the individual

---

[4]The dissenting opinion here would hold that the addressee need not be a natural person. That view is neither argued by any party nor endorsed by any judicial decision that we have been able to find, and it fails to make sense of the statutory reference in § 876(c) to a "threat to injure the person of the addressee." The dissent contends that our interpretation of the statute leads to absurd results because it would not permit conviction of a defendant who mails a letter to "Mom and Pop Grocery, Inc." containing a warning "Tomorrow I will come and shoot every one of you dead" or who mails an envelope of white powder to the "University Center Mosque" with the message "This will kill you all." The short answer to this argument is that § 876(c) does not have to cover all potentially criminal acts when its language does not support that interpretation. Threats delivered in person also are not addressed by § 876(c), but that fact of itself is not an absurd result. There are numerous statutes prohibiting threats, so threatening behavior need not go unpunished. *See, e.g.,* Ariz. Rev. Stat. Ann. § 13-1202(A)(1), (B) (West 2010) (threatening to cause physical injury to another person); 18 U.S.C. § 1038(a)(1) (conveying false information that terrorist activity has taken, is taking, or will take place, applied to criminalize the mailing of white powder in *United States v. Castagana*, 604 F.3d 1160 (9th Cir. 2010)). There is no need to stretch § 876(c) beyond the limits of its language to reach conduct better dealt with by other statutes.

addressee must be indicated on the outside of the envelope or package that is deposited in the mail. We conclude, again as a matter of context, that it must. There is more than one plain meaning of the verb "address." Among the definitions are: "to write or otherwise mark directions for delivery on" a letter, and "to speak, write, or otherwise communicate directly to." Webster's Third Int'l Dictionary 24 (1976). The context, in our view, favors the former definition. We are dealing, after all, with a statute that proscribes the use of the postal system for the delivery of a threatening communication, and the meaning of the word "addressed" as it relates to the postal system is narrow, pellucid, and long established. *See, e.g.*, United States Postal Service, *Domestic Mail Manual* § 602.2.3 (May 2009) ("Mail sent to an addressee at a commercial mail receiving agency . . . must be addressed to their private mailbox. . . ."); *id.* § 602.1.2 ("The delivery address specifies the location to which the USPS is to deliver a mailpiece. [T]he piece must have the address . . . only on the side of the piece bearing postage.").

**[4]** This definition of the word "addressed" finds further support in the statutory language that precedes it. Section 876(c) applies to "[w]hoever knowingly *so* deposits or causes to be delivered, *as aforesaid*" certain forms of threatening communications. 18 U.S.C. § 876(c) (emphasis added). The antecedents of "so" and "aforesaid" are found in subsection (a), which describes the act of "knowingly deposit[ing] in any post office or authorized depository for *mail matter*, to be sent or delivered by the Postal Service or knowingly caus[ing] to be delivered by the Postal Service according to *the direction thereon*" certain forms of threatening communications. *Id.* § 876(a) (emphasis added). In light of the context—namely, the depositing of mail matter—the phrase "the direction thereon" clearly refers to the delivery directions superscribed on an envelope or other packaging. When that language is then imported into subsection (c), it is most reasonable to carry the same connotation forward to one who "so deposits or causes to be delivered as aforesaid, any communication . . .

addressed to any other person and containing . . . any threat to injure the person of the addressee or of another." When one "deposits" a "communication" in the mail "addressed" to someone who is the "addressee," the normal reading in context is that the addressee is the person to whom the postal service is directed to deliver the letter. That direction appears on the outside of the envelope or package.

The Government relies on *United States v. Williams*, 376 F.3d 1048 (10th Cir. 2004). In *Williams*, the Tenth Circuit held that a trier of fact can consider, "at a minimum, both the envelope and the salutation of a letter" in determining whether the letter is "addressed to any other person" within the meaning of § 876(c). *Id.* at 1052. Thus, the court ruled, a reasonable jury could find that the letters in question—the envelopes for which were addressed to government offices, such as "United States Attorney's Office," and the salutations of which included official titles, such as "Hey, U.S. Attorney" —were addressed to a natural person.[5] *Id.* at 1051, 1053-54. To reach such a conclusion, the court was compelled to choose broad definitions of the words "address" and "communication" as used in the statute:

> The definition of "address" includes "to speak, write, or otherwise communicate directly to." The definition of "address" does not exclude the salutation of a letter. . . . Section 876 proscribes the mailing of a threatening *communication* which is "addressed to any other person." The word "communication" includes the contents of a letter. Thus, at a minimum,

---

[5]*Williams* also directed itself to the narrower issue of whether a government official is a "person" within the meaning of § 876(c). The court noted that its "holding that a communication addressed to a government official . . . falls within the ambit of the conduct proscribed by § 876" was consistent with the holdings of other decisions, including *Brownfield*, where the court held that the communication at issue must be addressed to a natural person. *Williams*, 376 F.3d at 1054 (citing *Brownfield*, 130 F. Supp. 2d at 1183-84).

the envelope and the salutation of a letter can both
be considered in determining whether a communica-
tion is "addressed to any other person" within the
meaning of § 876.

*Id.* at 1052-53 (citations omitted).

There are two answers to the Government's reliance on
*Williams*. First, as we have already said, the normal use of
"addressed" and "addressee" in the context of matter depos-
ited in the mail refers to the person indicated on the outside
of the envelope or package. It makes sense to choose that dic-
tionary definition rather than the alternative chosen by *Wil-
liams*. Second, the actual holding of *Williams*, that the
salutations indicated the addressee of the communication, is
of no aid to the Government here, because Havelock's general
diatribes were not headed by any salutation.[6]

The problem of moving beyond a bright-line, mail-oriented
meaning of "addressed" and "addressee" is well indicated in
this case. In *Williams*, it was enough for the court to consider
the salutations on the letters. In a dictum, however, *Williams*
said that the envelope and salutation can both be considered
"at a minimum." From that encouragement, the district court
here permitted consideration of the body of Havelock's enclo-
sures. Yet those enclosures indicated nothing at all about the
identity of the individual "person" to whom the communica-
tion supposedly was addressed. A few of Havelock's state-
ments appeared to be addressed to whoever read them: e.g.,
"I will slay your children." But to hold that such a statement
suffices is to read "addressed to any other person" out of

_____

[6]There is a potential third problem with the Government's position in
this case. The indictment alleged only the deposit of a communication
addressed to an institution; it did not allege a communication addressed to
"another person." Although Havelock moved to dismiss the indictment on
this ground for failing to state an offense, he has not argued that his con-
viction constituted a variance from the indictment.

§ 876(c). And, indeed, it is impossible to determine (and is highly unlikely) that Havelock, in the quoted phrase, was referring to any particular person whose children he was going to slay.[7] To omit the requirement of "addressed to any other person" is to broaden the scope of § 876(c) from threats communicated to specific individuals, inspiring an individual fear of harm to oneself or others, to threats communicated to the world at large. "[A]t least one of the aims of § 876 . . . is the preservation of the recipient's sense of personal safety." *United States v. Aman*, 31 F.3d 550, 555 (7th Cir. 1994). That aim is diluted if anyone at a recipient institution who reads the threatening message may be deemed an addressee.[8] Thus, we

---

[7]Of course, a threat to kill *any* children qualifies as a threat made to the person "of another" than the addressee. § 876(c). But that threat alone is not enough to satisfy the requirement that the communication be *addressed* to "any other person" than the sender. *Id.*

[8]After a thorough review of the legislative history of § 876(c), we can find no evidence that our interpretation of the statute is inconsistent with the "clearly expressed legislative intention." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). Congress enacted 18 U.S.C. § 338a, the predecessor statute to § 876(c), as a companion to the Lindbergh Law, which was itself intended to "permit [federal] officers to disregard state boundaries in the pursuit of kidnapers" and, together with § 338a, to "supply missing defenses against kidnaping." Horace Bomar, Jr, *The Lindbergh Law*, 1 Law & Contemp. Probs. 435, 435, 444 (1934); *see* S. Rep. No. 72-498, 1 (1932) (stating that H.R. 96, the bill that became § 338a, was "introduced . . . to curb the growing practice of using the mails for sending to intended victims demands for money and dire threats of confinement or death"). Nothing in the history speaks to the issue before us, but it is clear that the concerns motivating enactment of § 338a involved quite specific threats addressed to specific individuals through the United States mail.

The dissent refers to one letter addressed to an institution among examples cited by a congressional committee in connection with a proposed amendment to the predecessor to § 876. The proposed amendment was to permit prosecution in the district to which a letter was mailed, and the cited letter was among 19 examples of mailings to victims distant from the point of mailing. The 19 examples were listed in a Department of Justice memorandum. *See* S. Rep. No. 74-873, at 1, 3 (1935). We do not view such a tangential reference to one letter for an entirely different purpose to suffice as a "clearly expressed legislative intention," *Consumer Product Safety*, 447 U.S. at 108, that would permit us to deviate from the interpretation otherwise dictated by the statutory words in their statutory context.

conclude that the interpretation of § 876(c) advanced by the Government "goes beyond the meaning that justly may be attributed to the language used." *Fasulo v. United States*, 272 U.S. 620, 629 (1926). We will not stray from the necessary contextual meaning of that language. Congress is free to broaden § 876 if it wishes; we are not.

## CONCLUSION

**[5]** We conclude that the phrase "any other person" in § 876(c) refers exclusively to natural persons. We also conclude that the requirement of § 876(c) that the communication deposited in the mail be "addressed" to such person means that the natural person addressee must be designated on the outside of the letter or package deposited in the mail. Because none of the six packets of which Havelock was convicted of mailing was addressed on its cover to any natural person, his convictions cannot stand. We accordingly reverse the convictions on all six counts and remand the case to the district court for the entry of a judgment of acquittal.[9] This disposition makes it unnecessary for us to reach Havelock's remaining arguments.

**REVERSED.**

---

GRABER, Circuit Judge, dissenting:

I respectfully dissent. The majority holds the phrase "any other person" in 18 U.S.C. § 876(c) includes only natural persons. In my view, the majority errs. Section 876(c) prohibits

---

[9]We conclude that Williams's inclusion of his motion to dismiss the indictment in his motion for an acquittal under Fed. R. Crim. P. 29 was sufficient to preserve his contention that he could not properly be found guilty under § 876(c) when the threatening communications were addressed on the outside of the packets only to corporations or institutions.

mailing a threat to a corporation or other institution. Therefore, I would hold that Defendant's conduct here may have violated the statute.

Section 876(c) of Title 18 provides:

> Whoever knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, *addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another*, shall be fined under this title or imprisoned not more than five years, or both. If such a communication is addressed to a United States judge, a Federal law enforcement officer, or an official who is covered by section 1114, the individual shall be fined under this title, imprisoned not more than 10 years, or both.

(Emphasis added.) Other provisions of the statute likewise prohibit a communication "addressed to any other person" and containing a ransom demand, 18 U.S.C. § 876(a); and a communication, made with an intent to extort, "addressed to any other person" and containing threat to injure property or reputation or to accuse a person of a crime, 18 U.S.C. § 876(d).

The statute does not define "addressed to" or "person." The word "person" sometimes means only "a human being." But, by long-standing congressional command, a court should interpret the word "person" in a statute as including corporations and several other types of entities unless the context shows otherwise. 1 U.S.C. § 1. Similarly, the phrase "addressed to" has several possible definitions. Thus, considered in isolation, the phrase "addressed to any other person" is ambiguous as to whether or not it describes a communication mailed to a corporation.

The majority reasons that the context of "addressed to any other person" demonstrates that the "person" in that phrase must be a natural person because it is obvious that the "person" in a "threat to injure the person of the addressee" is a natural person. Maj. op. at 12655. The majority further holds that only the markings on the outside of the piece of mail establish the addressee. *Id.* at 12655-56. Finally, the majority concludes that Defendant's communications were not addressed to any natural persons. *Id.* at 12660. The result of the majority's interpretation is that the statute prohibits sending a threatening communication only if the outside of the envelope or package explicitly directs delivery to a natural person. *Id.*

Congress enacted § 876 to protect individuals from mailed threats of kidnapping, ransom demands, threats of bodily injury or death, and certain other serious threats. Act of July 8, 1932, Pub. L. No. 72-274, 47 Stat. 649. Indeed, Congress went to some trouble to define broadly the prohibited communications—the original version of § 876 expressly covered "any" letter or other communication, written or printed, with or without any sort of signature, sent by almost any conceivable method of mailing, containing a threat against either the addressee or another.[1] *Id.* Given this breadth

---

[1]As originally enacted, § 876 applied to whoever:

> with intent to extort from any person any money or other thing of value, shall knowingly deposit or cause to be deposited in any post office or station thereof, or in any authorized depository for mail matter, to be sent or delivered by the post-office establishment of the United States, any written or printed letter or other communication with or without a name or designating mark subscribed thereto, addressed to any other person, and containing any threat (1) to injure the person, property, or reputation of the addressee or of another or the reputation of a deceased person, or (2) to kidnap any person, or (3) to accuse the addressee or any other person of a crime, or containing any demand or request for ransom or reward for the release of any kidnapped person . . . .

§ 1, 47 Stat. at 649.

of coverage, it is unlikely that Congress intended to differentiate, for instance, between a death threat sent expressly and directly to a living person and one mailed to a corporation that employs that person. After all, both threats have exactly the same ill effect.

Yet under the majority's interpretation, the statute would not apply to an individual who mailed a letter bearing on its outside the address, "Mom and Pop Grocery, Inc." or "The DUII Defenders, LLC," and containing inside the warning, "Tomorrow I will come and shoot every one of you dead." The statute could not touch someone who mailed an envelope of white powder to the "University Center Mosque" with the message, "This will kill you all." In fact, despite the statute's current provision for a lengthier sentence if a threatening communication is addressed to a federal judge, the statute would not prohibit in the first place someone's mailing a letter to "The Ninth Circuit Court of Appeals" with the threat, "I will hunt down and take vengeance on the judges responsible for today's decision. It is an outrageous injustice, and you will not escape." The majority's interpretation produces absurd results.

"We will not presume Congress intended an absurd result." *Towers v. United States (In re Pacific-Atlantic Trading Co.)*, 64 F.3d 1292, 1303 (9th Cir. 1995). Rather, "[i]t is a cardinal canon of statutory construction that statutes should be interpreted harmoniously with their dominant legislative purpose." *United States v. Gallenardo*, 579 F.3d 1076, 1085 (9th Cir. 2009) (internal quotation marks omitted). Here, Congress manifestly intended to deter the sending of death threats and threats of bodily injury, and narrowly interpreting the phrase "addressed to any other person" runs counter to that purpose. Both the canon against absurd results and the purpose of § 876 weigh against the majority's interpretation.

Furthermore, nothing in the legislative history of § 876 suggests that Congress intended to restrict the prohibited commu-

nications to those mailed directly to a natural person. Indeed, when Congress amended § 876 in 1935 to permit prosecution in the district to which a communication was mailed, Congress had before it among examples of threatening communications a letter sent to "the Sisters of Mercy Hospital, Kalispell, Mont." S. Rep. No. 74-873, at 3 (1935). The examples considered by Congress in relation to a statute may provide some assistance in its interpretation. *See, e.g.*, *Flores-Figueroa v. United States*, 129 S. Ct. 1886, 1893 (2009) (looking to examples of identity theft cited in a committee report to decide whether Congress intended to limit an identify theft statute to the circumstance in which the offender knows that he or she has misappropriated the means of identification of an actual person). Here, the unremarked inclusion of a letter to an institution, among the examples of threatening communications presented to Congress, supports the conclusion that Congress did not intend to restrict § 876 to only those communications displaying on the outside of an envelope the name or title of a natural person.

We need not interpret the scope of § 876 to be as limited as the majority does, and there is a different interpretation by which we may construe the statute more broadly. I note that a corporate entity, although it may be deemed a person in many legal contexts, does not have opposable thumbs. It cannot physically open its mail or, even if envelopes are slit by a machine, read the contents to determine where to direct the missive. Common sense informs us that any piece of mail addressed to a corporation implicitly is addressed also to the natural person who will open it and deal with its contents on behalf of the corporation. Therefore, a threatening letter "addressed to" Mom and Pop Grocery, Inc., is addressed to Mom or Pop, its CEO, or a secretary, as well as to the corporation. Section 876(c) covers mail bearing the address of a corporation because such mail qualifies, by virtue of the implicit human addressee, as "addressed to any other person."

This interpretation of § 876(c) does not make the phrase "addressed to any other person" superfluous. That provision

would still bar prosecution of someone who mailed to himself or herself a communication containing threats, because a letter to oneself is not "to any *other* person." § 876(c) (emphasis added). For example, one could not be prosecuted for mailing a copy of one's journal to oneself even if the journal contained dire threats against one's enemies. And it makes sense that Congress would not have intended to prohibit such conduct—the recipient of a threat penned by himself or herself presumably suffers no harm thereby.

My "implicit addressee" interpretation of § 876(c) is a plausible reading in context, and it creates no tension between the use of the word person in the phrases "addressed to any other person" and "any threat to injure the person of the addressee" because both instances refer to a natural person. Those are the arguments underlying the majority's construction; my interpretation satisfies them as well. Moreover, unlike the majority's construction, my interpretation avoids the absurd result of shielding someone who mails a death threat to a corporation, and it is consistent with the legislative history and purpose of the statute. In these respects, it is superior to the majority's construction.

Because I would hold that a natural person is always an implicit addressee when a letter is addressed to a non-natural person, I would not reach in this case the question whether a court may look to materials inside an envelope to determine whether the communication is addressed to a person. The statute would apply to the communications mailed by Defendant regardless.

If the majority agreed that the statute prohibits Defendant's conduct, we then would have to decide whether the First Amendment protects his speech or whether his speech represents unprotected "true threats." *See Virginia v. Black*, 538 U.S. 343, 359 (2003) ("'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence

to a particular individual or group of individuals."). But because the majority does not reach that issue, I do not consider it here. Similarly, the majority does not reach Defendant's contention that there was insufficient evidence of his specific intent to threaten, and I also decline to analyze it.

In summary, I would hold that communications mailed to the *New York Times*, the *Los Angeles Times*, the *Phoenix New Times*, the Associated Press, theshizz.org, and azpunk.com may violate 18 U.S.C. § 876(c) because those communications are implicitly addressed to the natural person who necessarily will open and read them.