PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SCOTT LEWIS RENDELMAN,

Defendant-Appellant.

No. 08-4486

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Roger W. Titus, District Judge.
(8:07-cr-00331-RWT-1)

Argued: December 10, 2010

Decided: April 8, 2011

Before NIEMEYER and KING, Circuit Judges, and
Patrick Michael DUFFY, Senior United States District
Judge for the District of South Carolina,
sitting by designation.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Niemeyer and Senior Judge Duffy joined.

## COUNSEL

**ARGUED:** Paresh S. Patel, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant. Sujit Raman, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

## OPINION

KING, Circuit Judge:

Following a jury trial in the District of Maryland, appellant Scott Lewis Rendelman was convicted and sentenced for multiple offenses relating to the mailing of communications containing threats against various persons, including the President of the United States, in violation of 18 U.S.C. § 876(c). On appeal, Rendelman challenges two of those convictions (Counts Two and Seven of the seven-count indictment) on several grounds: first, that both charges were fatally defective for failure to properly allege § 876(c) offenses; second, that the evidence was insufficient to prove either offense; and, third, that both charges were constructively amended such that Rendelman was deprived of his Fifth Amendment right to indictment by a grand jury. As explained below, we reject each of those contentions and affirm.

I.

A.

In 2005 and 2006, Rendelman mailed letters to the United States Marshals Service in Sacramento, California, threatening to kill the President of the United States and others. Those

mailings constitute the predicate actions for the offenses underlying this appeal. Rendelman mailed the threatening letters from Maryland correctional institutions where he was incarcerated.

Rendelman's jury trial, in which he represented himself, was conducted in Greenbelt over a four-day period in December 2007. Rendelman contended at trial that the government's evidence was insufficient to support his convictions on Counts Two and Seven. More specifically, he maintained that the letters were simply protests against the authorities and that nothing in them constituted a threat. Rendelman also asserted that the evidence supporting Count Seven failed to show that the threatening communication mailed to the Marshals Service in California was "addressed to" the President or White House employees engaged in the performance of their official duties. On appeal, Rendelman has refined and further developed his arguments, a proper understanding of which requires us to identify the relevant allegations of the grand jury, ascertain and explain the pertinent statutory provisions, and assess whether the purported grounds for reversal were properly preserved in the district court.

### B.

In July 2007, the grand jury in the District of Maryland returned its indictment against Rendelman. Prior to trial, the district court dismissed Count One at the request of the government. At trial, the jury found Rendelman guilty of the other six charges — Counts Two through Seven — each of which charged the mailing of a threatening communication, in contravention of 18 U.S.C. § 876(c). Although discussed in greater detail below, § 876(c) provides, in pertinent part:

> Whoever knowingly so deposits or causes to be delivered as aforesaid, any communication . . . addressed to any other person and containing . . . any threat to injure the person of the addressee or of

> another, shall be . . . imprisoned not more than five years . . . . *If such a communication is addressed to . . . an official who is covered by section 1114, the individual shall be . . . imprisoned not more than 10 years . . . .*

§ 876(c) (emphasis added).[1] As explained further below, the last sentence of § 876(c) is not pertinent to the Count Two offense, but relates only to the potential punishment on Count Seven.

According to the indictment, Rendelman mailed the threatening letter underlying Count Two on about November 11, 2005 (the "2005 Letter"). Four months later, on March 7, 2006, he mailed another threatening letter (the "2006 Letter"), which underpins Count Seven.

With respect to the 2005 Letter, the grand jury alleged, inter alia, that Rendelman "did knowingly cause to be delivered by the United States Postal Service according to the directions thereon a written communication" that was "addressed to" the "'United States Marshal's Service' Sacramento, CA 95814," and which threatened "[t]he President of the United States," in violation of 18 U.S.C. § 876(c). J.A. 14.[2] Therein, Rendelman expressed several grievances against the government, particularly its penal system, and threatened to kill "government scumbags" and the President after being released from prison:

---

[1]The language of § 876(c) — that "[w]hoever knowingly so deposits or causes to be delivered as aforesaid" — adopts by reference the portion of subsection (a) specifying that

> [w]hoever knowingly deposits in any post office or authorized depository for mail matter, to be sent or delivered by the Postal Service or knowingly causes to be delivered by the Postal Service, according to the directions thereon . . . .

18 U.S.C. § 876(a).

[2]Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

I've decided I'm going to commit suicide, and I'm going to take as many government scumbags with me as I possibly can. When I'm released, I'm going to go to the White House, and I will suicide bomb the White House. . . . I will kill the President, whoever will be in the office at the time.

*Id.* at 625. Rendelman signed the 2005 Letter and placed it in an envelope directed to the Marshals Service in California. He then deposited the Letter in the mail at the Montgomery County Correctional Facility in Boyds, Maryland.

Regarding the 2006 Letter, the grand jury charged Rendelman with a separate violation of § 876(c), alleging that he

did knowingly cause to be delivered by the United States Postal Service according to the directions thereon a written communication addressed to "U.S. Marshall's Service, Federal Building, 501 I Street, Sacramento, CA 95814," and containing a threat to injure officers and employees of the United States engaged in the performance of official duties and covered by [18 U.S.C. § 1114,] as follows: "the President and all White House employees."

J.A. 15. In the 2006 Letter, Rendelman again expressed his disdain for the federal prison system and threatened to kill "the President and all White House employees" by bombing the White House. The 2006 Letter specified:

The President must die. When I am released I will kill him. I will suicide bomb the White House. I will strap a bomb to my body and go to the White House and set myself off. The President will die in the blast and the White House will be reduced to ruins. . . . So I will kill the President and all White House employees.

*Id.* at 627. Rendelman signed and mailed the 2006 Letter to the Marshals Service from the Maryland Correctional Institution in Hagerstown.

### C.

About a week before his trial was to begin, Rendelman moved to dismiss his court-appointed counsel and represent himself. The trial court granted Rendelman's request and appointed the federal public defender as standby trial counsel. *See Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) (explaining that trial court may appoint standby counsel for pro se defendant).[3] When the trial began on December 11, 2007, the prosecution's opening statement discussed Rendelman's history of sending threatening letters, and then described the communications underlying the relevant charges. A Marshals Service witness produced the 2005 and 2006 Letters, as well as the envelopes in which they had been mailed, and all were admitted into evidence.

At the close of the prosecution's case, Rendelman moved for judgment of acquittal on Counts Two and Seven, contending, inter alia, that the communications underlying those charges were not "true threats." J.A. 589.[4] The trial court denied the acquittal motions, however, explaining its view that there was sufficient evidence for the jury to conclude that the communications were indeed threatening and that both charges had been proved. Rendelman, who did not present any evidence, then rested his case and renewed his motions for judgment of acquittal.

---

[3]Rendelman does not pursue this appeal pro se, but is instead represented by the federal public defender.

[4]The jury was instructed — without objection — that a communication constitutes a true threat if an ordinary reasonable recipient who is familiar with the context would interpret it as a threat of injury. *See United States v. Roberts*, 915 F.2d 889, 891 (4th Cir. 1990).

At that point, Rendelman asserted an alternative ground for acquittal on Count Seven: that the 2006 Letter "was addressed to 'U.S. Marshals Service,'" and that, as a result, "there is no evidence that it was addressed to" a federal law enforcement officer or an official covered by § 1114. J.A. 597.[5] Rendelman thus argued that the threatening communication underlying Count Seven was not addressed to the President or any White House employee engaged in the performance of official duties. The significance of § 1114 to the proof of Count Seven was that, pursuant to the last sentence of § 876(c), if the threatening communication underlying a § 876(c) charge "is addressed to . . . an official who is covered by section 1114," the maximum term of imprisonment increases from "not more than five years" to "not more than 10 years" (the "Enhancement Element").[6]

In its response to Rendelman's motion, the prosecution argued that, although the envelope containing the 2006 Letter was addressed to the Marshals Service in California, the jury was entitled to assess the contents and context of the entire communication and decide whether, pursuant to § 1114, it was addressed or directed to the President and White House employees engaged in their official duties. The trial court then denied Rendelman's renewed motion for judgment of acquittal, explaining that,

> [f]irst of all, it's not necessary that the addressee of the communication be the person threatened; secondly from the context of the communication, it's

---

[5]Section 1114 of Title 18 — entitled "Protection of officers and employees of the United States" — criminalizes the killing or attempted killing of "any officer or employee of the United States . . . while such officer or employee is engaged in . . . the performance of official duties."

[6]Rendelman does not dispute that, for purposes of the Enhancement Element, the President and White House employees are officers and employees of the United States, and that, when engaged in their official duties, they are covered by § 1114. This very proposition was also judicially noticed by the trial court in its instructions on Count Seven.

clear that it is threatening somebody within the scope of Section 1114.

J.A. 600.

Rendelman also objected to certain aspects of the proposed instructions on Count Seven, maintaining that they did not properly reflect the allegations of the indictment. As a result, the trial court modified its proposed instructions, and gave the following instruction concerning Count Seven:

> As to Count Seven only, the government must also prove beyond a reasonable doubt that the threat was addressed to the officers or employees of the United States engaged in the performance of his, her or their duties. I instruct you that the President of the United States and all White House employees are such officers and employees of the United States, as defined in [18 U.S.C. § 1114].

J.A. 719.

Although Rendelman did not present any evidence, he did, in representing himself, offer an opening statement and a closing argument. Notably, his closing argument admitted a substantial part of the prosecution's case, advising the jury as follows:

> Now, there are three things I would like to get out of the way very quickly: 1. Did I write the letters? That is not an issue in this case. The defense concedes *I wrote the letters*. . . .

> 2. Did I mail the letters? That is not an issue in this case. The defense concedes that *I mailed the letters*. There is really no reason for you to have to discuss that in the jury room either.

3. Did I know — did I know what was in the letters that I was mailing? The defense — well of course. I wrote the letters. But in case there's any question, the defense concedes that, yes, *I knew what was in the letters that I was mailing*. That is no longer an issue that you need to discuss.

That only leaves one issue for you to decide: Do these letters contain threats as defined for you by the judge in the jury instructions.

J.A. 756-57 (emphasis added).[7]

The verdict form included an interrogatory on the Enhancement Element, which related to the statutory maximum penalty on Count Seven. The interrogatory posed this inquiry:

If you find the defendant guilty as to COUNT SEVEN, do you find that the communication was addressed to the President and all White House employees while those officers or employees were engaged in the performance of their official duties?

---

[7]On appeal, Rendelman does not pursue the contention that the 2005 and 2006 Letters did not contain threats. Rendelman argued to the jury that the 2006 Letter's threat to kill the President and White House employees was not proven to be a threat to kill them while they were engaged in official duties. He maintained that, because he did not specify when he would suicide bomb the White House, there was a reasonable doubt on whether the threat was directed to the President and White House employees while they were discharging their official duties. Indeed, he argued as follows:

An example: The act could be committed at night when the president and White House employees are sleeping, when they are not discharging their duties . . . . There is nothing in the evidence to support that this act was threatened to be committed at a time when these people were discharging their duties.

J.A. 778-79. Because Rendelman has not pursued this argument on appeal, it has been abandoned.

J.A. 853. On December 14, 2007, the jury returned its verdict against Rendelman, convicting him, inter alia, on Counts Two and Seven. The jury also answered "yes" to the Enhancement Element interrogatory. *Id.* As a result, the maximum term of imprisonment for Count Seven was ten years, pursuant to §§ 876(c) and 1114 of Title 18.

At the sentencing proceedings conducted on April 21, 2008, the district court sentenced Rendelman to 180 months in prison, that is, five concurrent terms of 60 months on each of Counts Two through Six, plus a consecutive term of 120 months on Count Seven.[8] Rendelman has filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

Whether an indictment properly charges a criminal offense is a question of law that we assess de novo. *See United States v. Bly*, 510 F.3d 453, 458 (4th Cir. 2007). When an appellant challenges the sufficiency of the evidence, the "verdict must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc) (emphasis and internal quotation marks omitted). An appellate contention that was not preserved in the trial court is reviewed for plain error only. *See United States v. Rooks*, 596 F.3d 204, 210 (4th Cir. 2010). The constructive amendment of an indictment, however — as opposed to a variance between the allegations of the charge and the proof at trial — constitutes error per se and must be corrected on appeal, regardless of whether the issue was preserved. *See United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999).

---

[8]The district court calculated Rendelman's advisory sentence range, under the applicable Guidelines, as 151 to 188 months. There are no issues raised on appeal concerning the court's application of the Guidelines.

### III.

Rendelman maintains on appeal that his convictions on Counts Two and Seven should be vacated for several reasons: first, that both charges were fatally defective for failure to properly allege § 876(c) offenses; second, that the evidence was insufficient to prove either offense; and, third, that both charges were constructively amended such that he was deprived of his Fifth Amendment right to indictment by a grand jury. As explained below, if Rendelman is unsuccessful on his challenges to the legal sufficiency of Counts Two and Seven, his other contentions are substantially undermined. Notably, Rendelman's challenge to the sufficiency of the evidence on the Enhancement Element of Count Seven was preserved in the district court, so we review that assertion for harmless error. By contrast, for the first time on appeal, Rendelman challenges the legal sufficiency of Counts Two and Seven and the sufficiency of the evidence on Count Two (on a different ground than that advanced at trial). He also asserts for the first time that both charges were constructively amended. As a result, our review of those contentions is confined to ascertaining that no plain error occurred.[9] We will assess and dispose of Rendelman's contentions in turn.

### A.

Rendelman first asserts that Counts Two and Seven are fatally defective for failure to allege § 876(c) violations. Prior to assessing that contention, we will first identify the require-

---

[9]To demonstrate plain error, a defendant bears the burden of showing (1) that an error occurred, (2) that it was plain, and (3) that it affected his substantial rights. *See United States v. Olano*, 507 U.S. 725, 732 (1993). If the defendant can make such a showing, correction of plain error lies solely within our discretion, which, under *Olano*, we "should not exercise . . . unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks and alterations omitted).

ments of a valid indictment and the essential elements of a § 876(c) offense.

1.

a.

In the federal system, an indictment need merely contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). As a general proposition, an indictment is sufficient if it alleges an offense in the words of the statute, as long as the words used in the indictment "'fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence.'" *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). More specifically, an indictment is legally sufficient (1) if it alleges the essential elements of the offense, that is, it fairly informs the accused of what he is to defend; and (2) if the allegations will enable the accused to plead an acquittal or conviction to bar a future prosecution for the same offense. *See Brandon*, 298 F.3d at 310; *see also* Fed. R. Crim. P. 7(c)(1).

b.

The specific statute underlying Counts Two and Seven, Section 876(c) of Title 18, was enacted "to prohibit the use of the mails to send threatening communications." *United States v. Zavrel*, 384 F.3d 130, 133 (3d Cir. 2004). A violation of § 876(c) requires three elements: first, that the accused caused a communication to be delivered by the Postal Service, addressed to any other person (the "Mailing Element"); second, that the communication contained a threat to injure the person of the addressee or another (the "Threat Element"); and, third, that the defendant knowingly mailed the threatening communication (the "Mens Rea Element"). *See* § 876(c); *see also United States v. Bellrichard*, 62 F.3d 1046, 1050 (8th

Cir. 1995) (observing that portion of § 876 now codified as subsection (c) has three elements).[10] The second sentence of § 876(c) contains a provisional fourth element, the Enhancement Element, which, in this case, relates to Count Seven only. The Enhancement Element increases the maximum penalty for the § 876(c) offense to ten years.[11]

2.

With these principles in mind, we first analyze Rendelman's contention that Count Two fails to charge a § 876(c) offense. Rendelman explains his position like this: (1) § 876(c) applies only to a communication "addressed to any other person and containing . . . any threat to injure the person of the addressee or of another"; (2) because an inanimate entity is generally incapable of suffering physical injury, the threatening communication must be addressed to a living person; (3) Count Two alleges that the 2005 Letter was "addressed to" the Marshals Service in California; and (4) the

---

[10]Some courts have merged the Mailing Element and the Mens Rea Element and described § 876(c) as having only two elements, the Threat Element and the Mailing Element. *See, e.g.*, *United States v. Floyd*, 458 F.3d 844, 847 (8th Cir. 2006); *United States v. Geisler*, 143 F.3d 1070, 1071-72 (7th Cir. 1998). The trial court in this case, however, treated the § 876(c) offenses as having the three elements described above. We are satisfied to treat the § 876(c) offense in that same manner for purposes of this appeal.

[11]The Enhancement Element, found in the second sentence of § 876(c), provides as follows:

If such a communication is addressed to a United States judge, a Federal law enforcement officer, or an official who is covered by section 1114, the individual shall be fined under this title, imprisoned not more than 10 years, or both.

§ 876(c). We observe that the United States Attorney and the grand jury did not allege the Enhancement Element in Count Two, and the trial court treated that charge as having a five-year maximum penalty. Although the proof on Count Two might well have satisfied the Enhancement Element, the prosecutorial decision not to include that allegation is not relevant to this appeal.

Marshals Service is not a living person. Thus, Count Two is fatally defective because the Marshals Service is not a "person" under § 876(c).

a.

In our recent decision in *United States v. Bly*, we addressed a somewhat analogous contention concerning the meaning of the word "person," as it is used in subsection (b) of § 876. *See* 510 F.3d 453 (4th Cir. 2007). Section 876(b) relates only to a threatening communication that is mailed with the "intent to extort from any person any money or other thing of value." Consequently, a § 876(b) violation requires an extortion element that is not present in § 876(c). *See Bly*, 510 F.3d at 458. In contending that the § 876(b) charge underlying his conviction was defective, Bly maintained that the statute criminalized only a threatening communication that was mailed with the intention of extorting a living person. According to Bly, his indictment failed to properly charge a § 876(b) offense because it alleged that he only intended to extort an educational institution (the University of Virginia), and not a "living person." *Id.* at 460.

We rejected Bly's contention that the University was not a "person" for purposes of the extortion element of § 876(b), ruling that the word "person" was subject to different meanings within that subsection. *See Bly*, 510 F.3d at 460-61. We reasoned that, "[a]lthough threats to kidnap a person and to injure the person of another are realistically limited to live persons, it is entirely reasonable to conclude that an artificial entity, such as [the University], can be the victim of an extortion demand." *Id.* at 461. In so ruling, we disagreed with Bly that the so-called "uniform usage rule" barred us from limiting "person" in some aspects of § 876(b) to a living person, and yet deeming the University to be a "person" for other aspects of the statute. *See id.*

We also discounted the argument that the University did not qualify as a "person" under § 876(b) because it was an

arm of the sovereign — the Commonwealth of Virginia. *See Bly*, 510 F.3d at 463-64. We then explained that our acceptance of Bly's contention would lead to an absurd result: a state university would not be protected from extortion attempts under § 876(b), yet a private university would be protected. *See id.* at 462 n.12. Thus, our conclusion in *Bly* — that the University is a "person" subject to extortion under § 876(b) — was buttressed by the rule that, when possible, we construe a statute to avoid an absurd result. *See id.* (citing *Aremu v. Dep't of Homeland Sec.*, 450 F.3d 578, 583 (4th Cir. 2006)).

b.

Turning to the merits of Rendelman's contention that Count Two fails to allege a § 876(c) violation, we reiterate the essential elements of that offense: the Mailing, Threat, and Mens Rea Elements. Count Two alleged each of those elements, and Rendelman does not seriously contend otherwise. First, Count Two alleged that Rendelman "did knowingly cause to be delivered by the United States Postal Service according to the directions thereon a written communication," that was "addressed to" the Marshals Service, thus alleging the Mailing and Mens Rea Elements. J.A. 14. Count Two then alleged that the communication contained "a threat to injure" the President, satisfying the Threat Element. *Id.* Rendelman challenges the Mailing Element, contending that the communication, which was addressed to the Marshals Service, was not addressed to "any other person" as required by the statute and the indictment. More specifically, he focuses on the proposition that the Marshals Service is not a living person.

Two of our sister circuits — the Second and Tenth — have recognized that a threatening communication addressed to the office of a public prosecutor can be reasonably understood as "addressed to" a government official, who is undoubtedly a "person" under § 876(c). *See United States v. Davila*, 461 F.3d 298, 308 (2d Cir. 2006) (rejecting on plain error review

contention that threatening communication to "Connecticut State's Attorney's Office" was not addressed to "specific person"); *United States v. Williams*, 376 F.3d 1048, 1052 (10th Cir. 2004) (recognizing that threatening communication addressed to "U.S. Dist. Attorney Office's" was directed to "natural person" holding that office). We agree with those decisions and conclude that Count Two, which alleges that the 2005 Letter was "addressed to" the Marshals Service, can reasonably be understood as addressed to the United States Marshal himself — a natural person. Nevertheless, the person or entity to whom the threatening communication is addressed is not an essential element of a § 876(c) offense. Section 876(c) merely requires proof that the accused knowingly mailed the threatening communication, not that he also intended to threaten the person of the recipient thereof. *See United States v. Floyd*, 458 F.3d 844, 847 (8th Cir. 2006). The phrase "addressed to any *other* person" in § 876(c) simply means that an accused does not violate that provision by mailing a threatening letter addressed to himself. In these circumstances, Count Two sufficiently alleges a violation of § 876(c), and there is no error — much less plain error — in its allegations.

3.

a.

Next, Rendelman challenges the legal sufficiency of Count Seven, asserting that it is also fatally defective because it alleges the 2006 Letter was "addressed to" the Marshals Service in California rather than to a living person. The contention that Count Seven is defective in that regard is misplaced. Count Seven plainly alleges that Rendelman "did knowingly cause to be delivered by the United States Postal Service according to the directions thereon a written communication," satisfying both the Mailing and Mens Rea Elements. J.A. 15. It then alleges that the communication contained "a threat to injure officers and employees of the United States," satisfying the Threat Element. *Id.* Count Seven thus passes legal muster

under plain error review, as it sufficiently alleges a § 876(c) offense.

b.

To fully assess Rendelman's contention on Count Seven, however, we must also decide whether it sufficiently alleged the Enhancement Element.[12] The United States Attorney and the grand jury apparently included the Enhancement Element in Count Seven because, in a federal criminal prosecution, facts that increase the statutory maximum penalty for a federal offense (other than a prior conviction) should be alleged in the indictment and proved beyond a reasonable doubt. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The *Apprendi* proposition developed in federal drug prosecutions and has never been directly applied to § 876(c). We will assume, however, for purposes of this appeal, that an allegation by the grand jury of the Enhancement Element was necessary here.

When an indictment's sufficiency is challenged for the first time on appeal — as here — the indictment is entitled to be "construed more liberally" and "every intendment is then indulged in support of [its] sufficiency." *United States v. Sutton*, 961 F.2d 476, 479 (4th Cir. 1992) (internal quotation marks omitted). In gauging the sufficiency of an indictment, we need only decide "whether the necessary facts appear in any form, or by a fair construction can be found within [its] terms." *Id.* (internal quotation marks omitted, alteration in original). Indeed, as to the "elements of the offense, the indictment will be held sufficient if it contains words of similar import" to the underlying statute. *United States v. Quinn*, 359 F.3d 666, 673 (4th Cir. 2004) (internal quotation marks omitted).

---

[12]Rendelman presents the question of whether Count Seven properly alleged the Enhancement Element as a constructive amendment issue. This contention, however, is more appropriately assessed as a challenge to the sufficiency of Count Seven's allegation of the Enhancement Element.

Count Seven first alleges that "a written communication" (the 2006 Letter) was "addressed to" the Marshals Service in California. J.A. 15. It then goes on to allege that the communication contained "a threat to injure officers and employees of the United States . . . covered by . . . Section 1114." *Id.* Section 876(c) provides, in the Enhancement Element, that "[i]f such a communication is addressed to . . . an official who is covered by section 1114" the maximum term of imprisonment is ten years.

Rendelman's position — as we understand it — is that Count Seven's allegation of the Enhancement Element does not reflect the language of § 876(c), and that it is therefore fatally defective. This position misconstrues § 876(c) in two important respects. First, the words "such a communication" in the last sentence of § 876(c) are simply a shorthand adoption by reference of the phrase in § 876(c)'s first sentence of "any communication . . . containing a threat to injure." Congress was entitled to write and adopt § 876(c) as it saw fit, and the requirement "such a communication" in the last sentence of § 876(c) is satisfied in Count Seven by the allegation that the communication underlying that charge contained "a threat to injure officers and employees of the United States . . . covered by . . . Section 1114." J.A. 15; *see Quinn*, 359 F.3d at 673 (finding allegations of indictment sufficient that "contain[ ] words of similar import" to statutory language).

Second, the "addressed to" provision of the Enhancement Element also means "*directed* to." Under its ordinary usage the word "address" means, inter alia, "to direct by way of communication: communicate directly," and "to direct by the words of (oneself)." *Webster's Third New International Dictionary* 24 (2002). As such, the threat contained in the 2006 Letter was sufficiently alleged as being "addressed to," i.e., "directed to," the President and White House employees, even though the letter was not mailed to them. In sum, the Enhancement Element of Count Seven passes legal muster, and there is no plain error to be identified therein. We thus

reject the contention that Count Seven is flawed with respect to the Enhancement Element.

## B.

### 1.

We turn next to Rendelman's sufficiency of the evidence contention, which is closely related to his assertions that we have just rejected — that the indictment failed to fully allege the Count Two and Count Seven offenses. Notably, Rendelman does not contend that evidence was lacking to support the jury's conclusion on both offenses that the Mailing, Threat, and Mens Rea Elements had been proved beyond a reasonable doubt. In fact, Rendelman's closing argument conceded all the elements of both offenses except the Threat Element, and he has abandoned the latter contention on appeal. Instead, Rendelman now challenges the proof of the two offenses on the identified grounds he used to test the legal sufficiency of Counts Two and Seven. That is, he maintains that the Marshals Service is not a "living person," and that an essential element of a § 876(c) violation thus could not be proven. As explained heretofore, we reject this contention.

### 2.

Next, Rendelman challenges the sufficiency of the evidence underlying the jury's affirmative answer to the interrogatory on Count Seven — that is, the jury's finding that the threatening communication "was addressed to the President and all White House employees while those officers or employees were engaged in the performance of official duties." J.A. 853. That finding established that the Enhancement Element had been satisfied, and increased the maximum prison term for Count Seven to ten years. *See* § 876(c). If the evidence did not sufficiently support the Enhancement Element, the maximum sentence on that offense was five years and Rendelman should be resentenced. The determination of whether there

was sufficient evidence to support the jury's affirmative response to the interrogatory — that the threatening communication was "addressed to the President and all White House employees" — turns on the meaning of "addressed to," as it is used in the Enhancement Element.

Although we partially resolved this issue earlier, it is fair to say that some courts have disagreed about whom a threatening communication is "addressed to" under § 876(c). *Compare, e.g.*, *United States v. Havelock*, 619 F.3d 1091, 1095 (9th Cir. 2010) (deciding that communication only "addressed to" person named on outside of envelope), *with, e.g.*, *United States v. Williams*, 376 F.3d 1048, 1052-53 (10th Cir. 2004) (concluding that word "communication" includes contents of letter, and that, at minimum, jury was entitled to consider address on envelope and salutation on letter to decide whom it was "addressed to"). In ruling as we do today, we are persuaded by the plain terms of § 876(c), our *Bly* precedent, the *Williams* decision, and common sense. At its essence, § 876(c) criminalizes the use of the postal system to deliver a threatening communication. Indeed, that subsection deals with threatening communications and not just the envelopes containing them. Hence, a threatening communication includes more than the envelope — it includes the contents thereof. *See Williams*, 376 F.3d at 1052.[13]

---

[13]We recognize that our ruling today may be at odds with that of the Ninth Circuit in *Havelock*, concluding that a "communication" under § 876(c) is only "addressed to" the person named on the envelope. *See* 619 F.3d at 1096. The *Havelock* majority's interpretation is troubling, as emphasized by the dissenting judge in that case. Under that interpretation, § 876(c) does not criminalize mailing a letter to the "Ninth Circuit Court of Appeals" containing the threat:

> "I will hunt down and take vengeance on the judges responsible for today's decision. It is an outrageous injustice, and you will not escape."

*Id.* at 1100 (Graber, J., dissenting). As the dissenting opinion appropriately observed, "[t]he majority's interpretation produces absurd results." *Id.*

Importantly, the term "addressed to" is twice found in § 876(c) — in the first sentence (concerning the Mailing Element) and again in the second sentence (concerning the Enhancement Element). Like the word "person" at the heart of *Bly*, the term "addressed to" in § 876(c) is subject to more than one meaning. In the Mailing Element of Count Seven, the term "addressed to" referred to the Marshals Service in California, as reflected on the envelope containing the 2006 Letter. On the other hand, the Enhancement Element alleged that the communication contained a "threat to injure" the President and White House employees. In evaluating the evidence, the jury was entitled to find — as it did — that the envelope was "addressed to" the Marshals Service, but that the "threat to injure" was "addressed to" the President and others. In evaluating Rendelman's position, we view the evidence — all of it — in the light most favorable to the prosecution, and we accord the jury, speaking through its verdict, the respect it is due. *See United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).[14] Having done so, we readily conclude that there was no defect in the proof of either of these offenses.

### C.

Finally, Rendelman maintains — for the first time on appeal — that Counts Two and Seven were constructively amended at trial. In so doing, Rendelman relies in part on statements made by the prosecutors characterizing the 2005 and 2006 Letters as letters to the President. On Count Seven, Rendelman also predicates his constructive amendment contention on the instructions and the Enhancement Element interrogatory.

---

[14]In the light most favorable to the prosecution, Rendelman addressed and mailed the 2006 Letter to the Marshals Service in California, and threatened to kill the President and White House employees. The threat to injure in the 2006 Letter was, as the jury found, addressed to (i.e., directed to) the President and White House employees while engaged in the performance of official duties.

Unfortunately for Rendelman, our rulings on the propriety of the charges and the supporting evidence render this contention meritless. As a result, we reject the proposition that Counts Two and Seven were constructively amended.

IV.

Pursuant to the foregoing, we reject each of Rendelman's contentions and affirm the judgment of the district court.

*AFFIRMED*